**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant, Cross-Appellee,**

v.

**GUARDIAN POOLS, INC., Defendant-Appellee, Cross-Appellant.**

No. 86–5382.

United States Court of Appeals, Eleventh Circuit.

Oct. 5, 1987.

**1508**

Rynthia Manning Rost, E.E.O.C., Washington, D.C., for E.E.O.C.

J. David Richeson, Richeson & Brown, Ft. Pierce, Fla., James G. Brown, Richeson & Brown, Orlando, Fla., Young T. Tindall, Ft. Lauderdale, Fla., for defendant-appellee, cross-appellant.

Before JOHNSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

CLARK, Circuit Judge:

In this case, which is making its second appearance before this court, the Equal Employment Opportunity Commission (EEOC) appeals from a district court order awarding Jill Crozier $6,100 in back pay, approving prejudgment interest at the rate of six percent, and denying other women back pay as a contempt sanction. Guardian Pools, Inc. (Guardian), the defendant below, cross-appeals the determination that Crozier is entitled to back pay for a period of 26½ months. We vacate the decision below and remand the case for further proceedings consistent with this opinion.

FACTS

In April, 1979, the EEOC filed a complaint against Guardian under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1982), after Jill Crozier was refused the job of pool service attendant during October, 1974. A male applicant was subsequently asked to apply for the position that Crozier had been told was filled. The EEOC alleged that Guardian intentionally discriminated against women in its recruitment, hiring, training, and assignment policies and practices, in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). Record, Vol. I, Tab 1. The complaint also alleged that Guardian had advertised job openings for men only, in violation of § 704(b), 42 U.S.C. § 2000e-3(b). The EEOC sought (1) a permanent injunction to prevent Guardian from continuing its discriminatory employment policies and practices; (2) an order to eradicate the effects of discrimination by affirmative action; and (3) an order to compensate those persons, including Crozier, affected by Guardian's unlawful employment practices with back pay, plus interest.

Crozier subsequently found employment with a typesetting company. She quit in January, 1975 and went to New Jersey for approximately six weeks. In August, 1975, she enrolled full time in Broward Community College's Fine Arts program. During college, she worked part-time in a grocery store, averaging 30 to 35 per week. After graduation in 1977, she worked as an unpaid apprentice to her jewelry instructor for nine months. Subsequently, she worked as a meat wrapper, at a desk job with a sunglasses manufacturer, and in jobs relating to jewelry design and sales. Since 1978, she has worked as an independent jewelry contractor.

On January 11, 1980, the EEOC filed an amended complaint, alleging a class action against Guardian on behalf of all female

applicants denied employment during the prior two years, and on behalf of women who are or will be in the future deterred from seeking employment with Guardian. Record, Vol. I, Tab 27.

On April 22, 1981, the district court entered a partial final judgment order against Guardian for its discriminatory treatment of women and refusal to hire Crozier. The district court enjoined Guardian from violating Title VII by refusing to hire women or by advertising positions for a specified sex. The district court also ordered Guardian to actively recruit women and to decrease the ratio of male to female employees to 2:1. Until the ratio was obtained, Guardian was directed to hire two women for every three vacancies. The order also set forth the minimal procedures Guardian was to use in reviewing employment applications, and the reporting procedures Guardian was to use to keep the EEOC informed of its progress. In addition, the district court ordered Guardian to publicize notices that advise women who could establish to the satisfaction of the court that they had applied for or that they had been deterred from seeking employment with Guardian after October 18, 1972 that they may be entitled to an award of back pay or other relief. The district court retained jurisdiction to enforce the provisions of its order for a period of two years. On July 24, 1981, the district court entered another partial final judgment order, which corrected clerical mistakes contained in the previous one. The order was affirmed by this court without opinion on December 12, 1982.

Between August, 1981 and January, 1983, the EEOC filed three motions for a show cause order and contempt judgment against Guardian on the ground that it refused to comply with the hiring and reporting requirements imposed by the district court. After the EEOC filed its fourth motion on August 31, 1983, the district court referred the matter to a magistrate, who conducted hearings during September and October, 1983. By order filed October 18, 1983, the magistrate found Guardian in contempt for withholding payroll records from the EEOC, misstating the

number and ratio of women hired between April, 1981 and October, 1982, misstating the number of people employed as pool service attendants, and failing to hire women in the numbers or ratio required by the district court's order of April 22, 1981. Guardian did not seek review of this order.

The parties reconvened in November, 1983 to determine the question of sanctions. The parties announced virtual agreement and, at the magistrate's suggestion, executed an agreed order on sanctions. The magistrate apparently modified the agreement only slightly by ordering Guardian to pay the EEOC a compensatory payment of $1,200 for costs. The "Agreed Order on Sanctions" provided that Guardian would file a weekly report of its hiring practices, and report any applicant hired. Record, Vol. III, Tab 120, Exh. A. If the report did not reflect the required ratios, Guardian was to be fined $250 per week. *Id.* If no report was filed, the fine would $500 per week. *Id.* The magistrate stated that because "further hearings are to be scheduled on money-damages owed to third persons, I choose not to recommend a large compensatory payment." Record, Vol. II, Tab 114 at ¶ 4. The transcript of the hearing on sanctions confirms that the parties agreed to litigate the question of back pay as a contempt sanction at a later date. Exh. 6S at 2. The district court issued a contempt judgment on December 29, 1983, which found Guardian in contempt from April, 1981 until October, 1983, and implemented the sanctions proposed by the magistrate.

Pursuant to the district court's partial final judgment, which found that Crozier and others were entitled to a reasonable award of back pay, the magistrate conducted hearings on January 31, and February 1, 1984. At the hearings, Crozier testified that had she been hired by Guardian in mid-October, 1974, she probably would not have returned to school on a full-time basis. Exh. 5S at 33. However, Guardian claimed that the cutoff date should be either when she left for New Jersey, or when she enrolled in college full-time. Exh. 7S at 33. The magistrate issued its order and recom-

mendation on February 14, 1984, finding (1) a probable employment period of 26½ months, i.e., from mid-October, 1974 until December 31, 1976; and (2) that had Crozier worked at Guardian during this time, she would have received $6,100 more than she reasonably earned elsewhere. The magistrate did not provide any clue as to how he arrived at the $6,100 figure. The magistrate then added six percent simple interest to the award, as of January 1, 1977, making the total amount $8,708, excluding post-judgment interest. The magistrate declined to award compensation to the class of approximately 26 female applicants not hired during the period of contempt because it found that these claims had not been adequately litigated. The magistrate permitted the EEOC to pursue administrative action on behalf of these women without prejudice.

On December 3, 1984, the district court ordered the magistrate to reconsider Crozier's back pay award because he had failed to specify the basis for his recommendation. The district court accepted the magistrate's recommendation that the interest rate be six percent. The district court relied on 28 U.S.C. § 1961 to determine the rate of post-judgment interest, which prior to its amendment provided that the interest rate be determined by reference to state law. The district court reasoned that Florida's interest rate governing judgments entered on or prior to October 1, 1981, was six percent, and that the judgment in this case had been entered during April, 1981.

Upon reconsideration, the magistrate again determined that 26½ months was the time Crozier would have worked at Guardian. The magistrate also found that Crozier did not remove herself from the job market when she traveled to New Jersey for four to six weeks, and that she did exercise reasonable self-help to mitigate her losses. However, the magistrate again failed to provide a explanation of the $6,100 back pay award, or the December 31, 1976 cutoff date.

On March 18, 1986, the district court found that the magistrate's supplemental order provided "sufficient specificity."

The district court affirmed the magistrate's recommendation regarding Crozier, denied the class claim for sanctions without prejudice to the institution of presumptive administrative proceedings, and terminated the reporting requirements that had been imposed on Guardian by the magistrate on December 28, 1983. Although Guardian failed to achieve the required quota and ratios, the court denied the class relief because there was no showing of actual prejudice. Final judgment implementing the order was filed on June 10, 1986. Both the EEOC and Guardian appeal to this court for relief from the final judgment.

## DISCUSSION

On appeal, the EEOC argues that (1) the $6,100 back pay award fails to make Crozier "whole;" (2) the amount of prejudgment interest should be determined by the IRS prime rates; and (3) an award of back pay for those women not hired by Guardian, in contempt of the district court's order, does not require proof of actual discrimination. On cross-appeal, Guardian argues that Crozier's back pay award should be based on a shorter period of time because she removed herself from the labor market (1) when she left her typesetting job due to dissatisfaction; (2) when she went to New Jersey; and (3) when she enrolled in a full-time course of study. We consider each argument of the EEOC separately. We address Guardian's cross-appeal under our discussion of Crozier's back pay award.

### I. *Back Pay Award*

In awarding damages under Title VII, the district court must attempt to place the injured party in the position he or she would have enjoyed absent discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Walters v. City of Atlanta*, 803 F.2d 1135, 1145 (11th Cir.1986). However, a person is required to mitigate damages by being reasonably diligent in seeking employment substantially equivalent to the position she was denied. *Smith v. American Service Co. of Atlanta, Inc.*, 796 F.2d 1430, 1431 (11th Cir.1986).

We review a back pay award under the abuse of discretion standard. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1562 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). However, the district court's discretion must be "guided by sound legal principles." *Albemarle,* 422 U.S. at 416, 95 S.Ct. at 2371. Congress vested " 'discretionary' powers in the courts ... not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the 'fashion[ing] [of] the most complete relief possible.' " *Id.* 422 U.S. at 421, 95 S.Ct. at 2373.

### A. *Period of Back Pay*

[1] The district court adopted the magistrate's determination that the period of back pay for Crozier should be 26½ months. The trigger date is obviously on or about October 18, 1974, when Crozier would have become employed by Guardian, absent discrimination. Although the magistrate did not specify why he chose the cutoff date of December 31, 1983, this date coincides with Crozier's graduation from the Fine Arts Program at Broward Community College. It is reasonable to infer that upon graduation, Crozier would have left her job as a pool service attendant and obtained a position in her chosen profession. Thus, the district court did not abuse its discretion in basing the back pay award on a time period of 26½ months.

We reject Guardian's argument that the period should be reduced because Crozier left her next position after a short period of time. Title VII requires reasonable diligence in locating employment and mitigating damages; it does not require that a person remain employed despite dissatisfaction. We also decline to reduce the period by the number of weeks Crozier spent in New Jersey. The magistrate credited her testimony that had she obtained the position she sought at Guardian, she would not

have gone to New Jersey.[1] Finally, we reject Guardian's contention that full-time enrollment at Broward removed Crozier from the labor market. Although certain full-time study programs might preclude full-time employment, *see, e.g., Miller v. Marsh,* 766 F.2d 490, 492 (11th Cir.1985), this one did not. Although she was a full-time student, Crozier worked 30–35 hours per week in a grocery store. Exh. 4S at 10, 14. Like the plaintiff in *Smith,* 796 F.2d at 1432, who tried to secure employment prior to beginning school and worked part-time while she attended school full-time, Crozier is entitled to back pay during the time she was enrolled at Broward. We conclude that the 26½–month period is appropriate, and affirm this part of the district court's decision.

### B. *Calculation of Back Pay*

█ Although the district court requested the magistrate to clarify how he arrived at the figure of $6,100, he failed to do so.[2] Nevertheless, the district court adopted the magistrate's recommendation with respect to the back pay award. It is clear that this amount does not make Crozier "whole" within the intent of Title VII. Were the basis for calculating a reasonable award less clear, we might be inclined to remand this case to the district court for more explicit findings. However, the magistrate and the district court have each had two occasions to calculate the amount. At this juncture, we are obliged to exercise our discretion to fashion the most complete relief possible. *Albemarle,* 422 U.S. at 421, 95 S.Ct. at 2373.

The evidence shows that a pool service attendant earned an average of $200 per week during 1974 and 1975, and $210 per week during 1976. Exh. 7S at 49–53; Plaintiff's Exh. 20. Based on these figures, Guardian would have paid Crozier $23,320. However, during the interim, Crozier earned $4,740. The difference be-

---

1. Crozier testified that one of the primary reasons she left Florida for a few weeks was to relieve frustration caused by subjection to sex discrimination at Guardian, and by dissatisfaction with the job she did secure. Exh. 4S at 8; Exh. 5S at 7.

2. Review of the transcript of the hearing concerning Crozier's damages does not reveal the rationale behind the magistrate's decision.

tween these figures is $18,580. Thus, Crozier is entitled to a back pay award of $18,580.

II. *Interest Rate*

In *Smith*, 796 F.2d at 1432–33, this court reserved ruling on whether the decision to award prejudgment interest in a Title VII back pay case lies within the discretion of the district court. In this case, the district court adopted the magistrate's recommendation to award prejudgment and postjudgment interest. Thus, we need only consider whether the district court followed the law in determining the proper interest rates. We review, as a matter of law, the district court's determination that a six percent rate of prejudgment interest governs Crozier's back pay award.

First, we assess the district court's conclusion that judgment in this case was entered on April 22, 1981. Although the district court indeed entered an order for partial final judgment on that date, Crozier did not receive a certain sum damage award until the district court entered final judgment on June 9, 1986. *See* Record, Vol. 4, Tab 284.

■ Second, we consider which interest rate should govern an award of prejudgment interest in a Title VII case. As this court has done on other occasions, we turn to the National Labor Relations Act (NLRA) for guidance. *See, e.g., Smith*, 796 F.2d at 1432; *Brown v. A.J. Gerrard Manufacturing Co.*, 715 F.2d 1549 (11th Cir.1983) (en banc) (per curiam). *Brown* determined that Congress intended to model Title VII remedies on those afforded by the NLRA. *Smith*, 796 F.2d at 1432. We note that there has been a consistent practice under the NLRA to award interest on back pay awards. *See, e.g., Winn-Dixie Stores, Inc. v. NLRB*, 413 F.2d 1008, 1010 (5th Cir.1969). In 1977, the National Labor Relations Board (NLRB) adopted the IRS prime rates and rejected the traditional flat six percent interest rate. *Florida Steel Corp.*, 231 NLRB No. 117, 96 L.R.R.M. 1070, *enforcement denied on other grounds, sub nom. NLRB v. Florida Steel Corp.*, 586 F.2d 436, 451 (5th Cir.1978). The NLRB adopted the prime rate because the flat percentage rate did not reflect economic reality. *Id.* Other district courts within this circuit have been persuaded by the NLRB's policy changes and have used the IRS prime rates to calculate the amount of prejudgment interest on back pay awards in Title VII cases. *See, e.g., Walters v. City of Atlanta*, 610 F.Supp. 715 (N.D.Ga.1985), *aff'd in part, rev'd in part*, 803 F.2d 1135 (11th Cir.1986); *Davis v. Construction Materials, A Division of Ancar Enterprises, Inc.*, 558 F.Supp. 697, 699 (N.D.Ala.1983). We find this approach to be the correct one. In the interest of uniformity, we vacate the district court's decision with respect to the rate of prejudgment interest. We direct the district court to calculate an award of interest based on the IRS prime rates that prevailed between 1977 and 1986.

■ Third, we address which post-judgment interest rate should apply to the back pay award. The district court's decision to use six percent is erroneous because the district court relied upon the unamended version of § 1961, which provided that the interest rate be determined by state law.[3] Section 1961 was amended, effective October 1, 1982, to provide that the post-judgment interest rate be determined by the IRS prime rates, compounded annually.[4]

---

3. Prior to its amendment effective October 1, 1982, the statute provided:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. Such interest shall be calculated from the date of entry of the judgment at the rate allowed by State law.

28 U.S.C. § 1961.

4. 28 U.S.C. § 1961, as amended, provides:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date

Thus, the correct rate of post-judgment interest on a judgment entered June 9, 1986 depends upon the IRS prime rates. We vacate the district court's decision to use six percent and direct it to calculate a more appropriate rate of post-judgment interest.

### III. *Back Pay Award As Contempt Sanction*

■ Section 706(i), 42 U.S.C. § 2000e–5(i), authorizes the EEOC to commence proceedings to compel compliance with court orders. As one contempt sanction for Guardian's noncompliance, the EEOC sought compensatory relief for the female applicants who would have been hired by Guardian if it had obeyed the district court's order of April 22, 1981. The EEOC contends that 26 out of 159 women who applied for the pool service attendant position between April 22, 1981 and December 31, 1982 would have been hired had Guardian complied with the order. Based on the salaries of the men hired instead, the EEOC's expert estimated that the 26 women would have earned $93,695, including prejudgment interest. The EEOC requested that this amount be put into a fund for pro rata distribution to the 159 female applicants.

Contempt hearings were conducted by the magistrate during September and October of 1983. Exh. 5S, 6S, and 7S. The magistrate recommended that Guardian be found in contempt for, *inter alia*, failing to have female pool service attendants in the number and ratio required by prior court order. Record, Vol. 2, Tab 113. The parties discussed sanctions before the magistrate, apparently on November 15, 1983. *See* Record, Vol. 2, Tab 114.[5] By report

filed November 23, 1983, the magistrate recommended that Guardian pay the EEOC a compensatory payment of $1,200 for costs, and that the agreed order on sanctions (Exhibit A) be modified as proposed in Exhibit B.[6] The magistrate deferred consideration of "money-damages owed to third persons" until another hearing. Record, Vol. 2, Tab 114 ¶¶ 4 & 5. By order filed December 29, 1983, the district court entered a contempt judgment against Guardian for the period from April, 1981 until October, 1983 on the basis of the magistrate's report and recommendation. Record, Vol. 3, Tab 120. The district court ordered Guardian to (1) pay the EEOC the recommended $1,200; (2) file weekly reports of all pool service attendants employed during the previous week; (3) pay a $250 fine for each week not in compliance with required 2:1 ratio; (4) pay a $500 fine for each report not filed; (5) file with the court a document indicating the accurate ratio of men to women employed from April, 1981 until October, 1983; (6) pay a $100 fine for each day such report is late; (7) submit to the EEOC written hiring and interviewing procedures for approval; (8) notify the EEOC regarding the name and sex of each person hired; (9) submit all applications, including notes reflecting a decision to hire a male; (10) for each male hired, submit reasons for not hiring any females; (11) inform each male hired or transferred into the pool service position that his job status is temporary for 30 days; and (12) submit complete and accurate payroll records on a weekly basis.

With the agreement of the court, the parties deferred consideration of awarding back pay as a sanction until the hearing on

of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

5. Exh. 6S contains a transcript of a hearing before the magistrate concerning sanctions other than back pay. The transcript bears no date, and represents but one instance in which we have found the record submitted by the parties on appeal deficient.

6. We are particularly disturbed by the inadequacy of the record excerpts on the issue of back

pay as a contempt sanction. At a minimum, Exhibit A to the magistrate's report and recommendation should have been included in the record excerpts. More important, Exhibit B should also have been included, especially because it has been omitted from the record. *See* Record, Vol. 2, Tab 114. For the reasons in footnote 7, inclusion of Exhibit B would have mitigated the need to extrapolate what indeed occurred from the incomplete and undated materials before us.

Crozier's back pay award.[7] *See* Exh. 6S at 2 (hearing before the magistrate; date unavailable); Record, Vol. 2, Tab 113 ¶¶ 4 and 5 (Magistrate's Report and Recommendation filed November 23, 1983); Exh. 7S at 2–20 (hearing before the magistrate; date unavailable). After the hearings, the magistrate declined to recommend an award because he believed that the rights of the female applicants had not yet been adequately litigated. Record, Vol. 3, Tab 140. The magistrate did state that the contempt citation against Guardian for failure to hire female pool service attendants in the required number and ratio created a rebuttable presumption that those women should have been hired.

The district court declined to order an award of back pay to the class because no member had actually established discrimination. Record, Vol. 4, Tab 269. The district court cited one case, *Ferguson v. Veteran's Admin.*, 723 F.2d 871 (11th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984), for the proposition that absent a showing of discrimination, there is no cause of action under Title VII for an employer's failure to meet a court imposed quota. However, this interpretation of *Ferguson* does not apply to the instant case. *Ferguson* involved a plaintiff who sought relief under Title VII because her employer allegedly failed to follow its own affirmative action plan by not training and promoting her to a librarian position. *Ferguson* did not involve contempt of a court order. Thus, *Ferguson* does not control this case, which involves imposition of a contempt sanction for disobeying a court order based on a finding of discrimination and issued under, and in compliance with, Title VII.

The EEOC argues that compensatory relief does not depend upon a finding of discrimination, but instead flows properly from a contempt judgment, relying primarily upon *Local 28 of Sheet Metal Workers' International Assoc. v. EEOC*, —— U.S. ——, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986) and Title VII policy. The EEOC does not dispute that a compensatory award still depends upon "actual loss."

Guardian responds that the district court exercised its sound discretion in refusing to award back pay to the class as part of the contempt proceeding. Guardian claims that violation of an affirmative action quota, absent a finding of actual discrimination, is insufficient to establish liability or relief under Title VII.[8] Guardian also seeks support for its position in *Local 28*. In a footnote, the Supreme Court stated that the district court properly limited make whole relief, including back pay, to the actual victims of discrimination. 106 S.Ct. at 3049 n. 44. However, Guardian ignores that the district court awarded back pay in the initial proceeding, and not as a contempt sanction. *Id.* at 3027 n. 7. Guardian also contends that the availability of contempt damages to a third-party class is foreclosed by *Northside Realty Associates v. United States*, 605 F.2d 1348 (5th Cir.1979). In *Northside*, the former Fifth Circuit declined to award compensatory damages to nonparty victims in a civil contempt proceeding. However, the female applicants not hired by Guardian between 1981 and 1983 are members of the class on whose behalf the EEOC proceeded during the initial stages of this case. *See* Record, Vol. 1, Tab 27 (Amended Complaint ¶ 7(b)). Thus, the *Northside* court's hesitation to explore issues incident to the underlying proceeding does not extend to the instant

---

7. As discussed in footnote 6, the omission of Exhibit B from the record excerpts is inexcusable. It appears from the magistrate's report and recommendation that Exhibit B contains the EEOC's proposed order on sanctions, which would establish that the issue of back pay as a contempt sanction was preserved with the approval of the court. However, because the transcripts of the hearings before the magistrate indicate that the issue was preserved, *see* Exh. 7S at 2–20, we consider the issue. Guardian did not raise the issue on appeal and, in its brief,

stated that "[t]he parties agreed that additional hearings were necessary both with respect to the Crozier back pay and the class back pay." Appellee's Brief at 4.

8. Moreover, we find it ironic that Guardian invokes Title VII as a bar to such relief after it both violated Title VII and subsequently violated the district court's order to comply with Title VII.

case because the women are not nonparty victims.

We review the district court's order denying the availability of back pay as a contempt remedy as a matter of law, and not for an abuse of discretion. We find that a variety of contempt sanctions may be imposed, including an award of back pay, but believe it appropriate to permit the district court to decide what, if any, sanction is justified for Guardian's failure to achieve the mandated quota and ratio. Our reasons follow.

The purposes of civil contempt sanctions are "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Local 28*, 106 S.Ct. at 3033 (citation omitted); *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir.1976).[9] The district court has wide discretion to fashion an equitable remedy for contempt that is appropriate to the circumstances. As the Supreme Court stated in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949), the court has the power to "grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. This may entail the doing of a variety of acts...." Where the purpose of the contempt sanction is compensation, a fine is imposed that is generally payable to the complainant. *United States v. UMW*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). The fine is determined by the extent of the actual loss and the outcome of the basic controversy. *Id.* Where the purpose of contempt is to secure compliance, the sanction is within the district court's discretion. The district court is to consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* Before imposing either type of sanction, the court should also consider the financial resources of the defendant, and the resulting burden to the defendant. *Id.*

In *Local 28*, the Supreme Court addressed the question of whether a contempt remedy could encompass persons who were not the actual victims of discrimination. The Court held that a district court may, in appropriate circumstances, order contempt relief under Title VII that benefits individuals who are not the identified victims of a defendant's unlawful discrimination. The Court upheld a district court order that placed contempt fines in a fund to benefit non-white apprentices. 106 S.Ct. at 3033. The defendants (the Union and the Apprenticeship Committee of the Union) had been found guilty of engaging in a pattern and practice of discrimination against black and Hispanic apprentices in violation of Title VII. *Id.* at 3024. The district court had ordered the defendants to end their discriminatory practices and to admit a certain percentage of non-whites to the union by 1982. In 1982 and again in 1983, the defendants were found guilty of civil contempt for disobeying the prior court order.[10] To remedy the contempt, the court imposed a $150,000 fine to be placed in a fund designed to increase non-white membership in the apprenticeship program and the union. *Id.* at 3029. The funds sought to increase non-white membership by, *inter alia*, financing recruiting efforts at vocational schools, creating short-term employment opportunities, and providing non-white apprentices with tutorial, counseling, and financial support services. *Id.* at 3033. Once the defendants ended their discriminatory practices and achieved the court ordered membership goal, they would be entitled, with the court's approval, to any moneys remaining in the funds. *Id.* The Supreme Court found that the fund and other sanctions

---

9. Civil contempt sanctions are distinct from criminal contempt sanctions, which "are punitive in nature and are imposed to vindicate the authority of the court." *Local 28*, 106 S.Ct. at 3033.

10. The district court did not rest its contempt finding on the failure to meet the 29% membership goal, but on the failure to comply with the court imposed affirmative action plan. *Id.* at 3028.

ordered by the district court were proper remedies for civil contempt and necessary to remedy past discrimination. *Id.* at 3050–52, 3054. *Local 28* makes it clear that, in a contempt proceeding, the imposed sanctions may benefit persons who are not proven victims of discrimination.

It is clear that courts have the authority to fashion equitable relief, including the award of back pay, in order to secure compliance or compensate the victims. *See, e.g., Rowe v. General Motors Corp.,* 586 F.Supp. 368 (N.D.Ga.1984) (class-wide compensatory award of back pay may be financed from fines assessed against General Motors for the period during which it failed to comply with the court's injunctive decree); *EEOC v. Georgia Pacific Corp.,* 16 F.E.P. 1225 (Or.1976) (awarding back pay and retirement contributions to woman who was not offered the first available position, in violation of the court's order); *United States v. Wood, Wire & Metal Lathers International Union, Local 46,* 328 F.Supp. 429 (S.D.N.Y.1971) (awarding back pay to non-whites deprived of outside work in violation of the court's order).[11] The court in *Wood, Wire & Metal Lathers* stated that "it seems evident that compensatory back pay is an apt remedy for violations of the court's decree." 328 F.Supp. at 441.

We conclude that the district court erred in stating that it could not award back pay as a contempt sanction, absent a showing of actual discrimination. The court has the power to issue contempt sanctions, including fines to coerce the employer or compensate the victims, under its inherent authority to ensure compliance with its orders. The constraints that govern relief under Title VII, such as the need to prove actual discrimination, do not apply to contempt proceedings. As controlling precedent indicates, the district court is constrained by different considerations in subsequent contempt proceedings. *See Local 28,* 106 S.Ct. at 3033; *UMW,* 330 U.S. at 304, 67 S.Ct. at 701.

We remand this case to the district court to determine whether a contempt sanction for Guardian's failure to obey its order to reach a specified quota is justified. *Local 28* makes it clear that members of the class of female applicants denied employment by Guardian during the period of contempt need not establish that they were actual victims of discrimination in order to qualify for relief. Although Guardian's continued practice of discriminating against women in its hiring process is the ground for the contempt, imposing a coercive or compensatory sanction does not depend upon whether Guardian discriminated against each individual class member.[12] On remand, the district court should first consider whether a sanction is necessary to coerce Guardian's compliance with the court's initial order, or to fully compensate the class for the losses sustained. If the court decides that a sanction is warranted, it should then determine whether the appropriate remedy ought to be an award of back pay. If back pay is the appropriate contempt sanction, the district court should determine whether a class-wide approach is warranted, which members are entitled to relief, the amount of relief, including interest, and the method of distribution. The district court may use its equitable discretion to impose whatever sanction would fulfill the intended objective, whether it be coercive or compensatory.

## CONCLUSION

We reverse the district court's order granting Crozier a back pay award of $6,100, plus six percent prejudgment and post-judgment interest, but affirm the finding that she is entitled to back pay for a period of 26½ months. On remand, the district court should enter a judgment for

---

11. The fact that the Attorney General in *Wood, Wire & Metal Lathers* sought relief under § 707 of Title VII, 42 U.S.C. § 2000e–6, rather than the EEOC under § 706(i), 42 U.S.C. § 2000e–5(i), is of no consequence.

12. In this case, the EEOC could seek compensatory back pay for these women pursuant to the district court's order that women deterred from seeking employment as pool service attendants could petition the court for back pay or other relief. *See* Record, Vol. 2, Tab 59 (Dist.Ct. Order dated April 22, 1981 ¶ N).

Crozier in the amount of $18,580, and then apply the proper rates of prejudgment and post-judgment interest. We also reverse the district court's order that the female applicants not hired as pool service attendants during the period of Guardian's contempt of the district court order are not entitled to back pay as a contempt sanction. We direct the district court to determine whether a sanction is justified and, if so, whether back pay would constitute appropriate relief for civil contempt under the circumstances.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.