Elizabeth ARMSTRONG, Plaintiff,

v.

**CHARLOTTE COUNTY BOARD OF COUNTY COMMISSIONERS, Defendant.**

No. 2:02–CV–73–FTM–29DIVF.

United States District Court,
M.D. Florida,
Ft. Myers Division.

April 10, 2003.

Amy L. Sergent, Lancaster & Eure, Sarasota, FL, for Plaintiff.

Brendan Bradley, Charlotte County Attorney's Office, Port Charlotte, FL, for Defendant.

### RULING ON PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST AND FRONT PAY [Doc. # 68]

EGINTON, Senior District Judge.

Following a four-day trial, the jury returned a verdict in favor of the plaintiff, Elizabeth Armstrong, on her claims of hostile work environment, disparate treatment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992, Fla. Stat. Ann. §§ 760.01–760.11, as well as on her claim of retaliation under Florida's Workers' Compensation Law, Fla. Stat. Ann. §§ 440.01–440.60. The jury awarded plaintiff compensatory damages of $55,000 for lost wages and benefits to the date of trial, and $275,000 for emotional pain and mental anguish. Because front pay and prejudgment interest are equitable remedies within the province and discretion of the trial judge, *see United States Equal Employment Opportunity Commission v. W & O, Inc.*, 213 F.3d 600, 618–19 (11th Cir.2000), this Court reserved decision on these matters until after trial. Plaintiff has now moved for an award of front pay pursuant to 42 U.S.C. § 2000e–5(g) and Fla. Stat. Ann. § 760.11, and for an award of prejudgment interest. Plaintiff's mo-

tion will be granted to the extent set forth below.

### Discussion

### I. Front Pay

■ The Eleventh Circuit has held that "[i]n addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir.1991)(superseded by statute on other grounds); *see also W & O, Inc.*, 213 F.3d at 619. "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). Although reinstatement is the preferred remedy in a wrongful discharge case, when extenuating circumstances warrant the court may award a plaintiff front pay in lieu of reinstatement. *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1339 (11th Cir.1999). In making the determination whether to award front pay, the courts have looked to whether discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy, whether there had been intimidation or threats by defendant's management toward the plaintiff, or whether the termination had harmed the plaintiff's emotional well-being. *W & O, Inc.*, 213 F.3d at 619 (internal citations and quotation marks omitted).

■ In this case, defendant does not contend that plaintiff should be awarded reinstatement rather than front pay. This case involved not only wrongful termination, but also harassment and retaliation. The acrimony between plaintiff and her supervisor and the discord within the department during plaintiff's employment were prevalent themes throughout the trial. Moreover, defendant indicated its unwillingness to rehire plaintiff by virtue of its rejection of her applications for some thirty other positions, following her workers' compensation injury. Additionally, this is a case involving significant emotional distress, as evidenced by the jury's award of substantial damages for plaintiff's emotional pain and mental anguish caused by defendant's discrimination. Thus, the Court finds that reinstatement is not a viable remedy and that front pay should be awarded in lieu of reinstatement. *See Pollard*, 532 U.S. at 846, 121 S.Ct. 1946. The only issue is the amount of front pay.

Plaintiff has sought front pay through February 6, 2009, "at which time she anticipates that she will have completed her schooling in her new chosen field of computer electronics, and she will by that time be making an amount which is commensurate with the wages and benefits she would have received from the defendant." (Pl.'s Mot. at 2.) Plaintiff calculates her claim for front pay based upon her former annual salary of $26,500, plus semi-annual cost-of-living increases, plus overtime of $300 per week for 20 weeks each year. Additionally, she seeks an unspecified amount of compensation for her lost benefits, including health insurance, long-term and short-term disability insurance, cancer coverage, accident insurance, dental insurance, life insurance, and a retirement plan.

Defendant has objected to plaintiff's request for front pay on the grounds (1) that the information she has provided as to her wages, overtime, and benefits is too speculative to support a front-pay award, and (2) that plaintiff cannot recover for lost benefits unless she replaced those benefits, of which there has been no proof.

■ Inherent in any award of prospective relief, such as front pay, is "some risk of uncertainty." *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir.2000). That uncertainty does not in and of itself preclude a front-pay award.

Plaintiff testified that at the time she was terminated, she was earning $12.50 per hour, or $26,500 per year. (R. 131.) With semi-annual cost-of-living raises, at the time of trial, she would have been earning $13.50 per hour, or $28,080 per year. (R. 133.) Although defendant has challenged plaintiff's figures as speculative, defendant has failed to demonstrate how her figures are inaccurate or excessive. *See Virgo v. Riviera Beach Associates, Ltd.,* 30 F.3d 1350, 1364 (11th Cir.1994). Defendant certainly had the ability and resources to refute her testimony at trial, but failed to do so. Plaintiff's testimony concerning her rate of pay and cost-of-living increases while employed by defendant is uncontradicted and is sufficiently definite to allow the Court to calculate a front-pay award based upon this evidence.

■ Plaintiff also testified that she earned overtime wages of approximately $300 per week, although most of her overtime was during the first six months of her employment when she was a probationary employee, trying to make a good impression on management. (R.12.) There was no evidence concerning the amount of overtime plaintiff worked after the first six months of her employment or the amount of overtime that is generally worked by employees in plaintiff's position. The Court finds that the overtime compensation requested by plaintiff as part of a front-pay award for the next six years is too speculative to support such an award and denies plaintiff's claim to that extent.

■ As for plaintiff's request for compensation for future lost benefits, defendant asserts that plaintiff is only entitled to damages for these benefits to the extent she incurred costs in replacing them.

Plaintiff states that she could not afford to replace them because the cost was prohibitive. The monthly cost for COBRA health benefits alone would have been $400 per month. (R. 132.) No other evidence was introduced concerning the value or cost of these benefits.

■ In order to effectuate the "make-whole" purpose of the remedies provided by the federal and state employment discrimination statutes, this Court finds that an award for lost benefits is appropriate regardless of whether plaintiff has actually incurred costs in replacing those benefits. *See Weaver,* 922 F.2d at 1529. Front-pay awards should replicate the effects of reinstatement, which benefits would have included these benefits and which plaintiff lost by virtue of defendant's illegal discrimination. Plaintiff should not be penalized by virtue of the fact that she cannot afford to replace these lost benefits. These lost benefits were elements of her claim for back pay and are also appropriate elements of a front-pay award, regardless of whether she actually purchased these benefits elsewhere.

■ The burden of proof is on plaintiff to prove her damages. The only evidence plaintiff introduced concerning the cost of these lost benefits was her testimony that her health insurance under COBRA would have cost $400 per month.[1] (R. 132.) Accordingly, the Court will allow the plaintiff to recover for lost benefits in the amount of $400 per month for the period that front pay is awarded.

■ The only remaining question is the length of time for which front pay should be awarded. As indicated, plaintiff

---

1. In her motion for front pay and prejudgment interest, plaintiff requests a hearing to present additional evidence on the value of these benefits, "[i]n the event the Court is unable to place a value of these benefits." (Pl.'s Mot. at 3, n. 2.) That request is denied. This is evidence that should have been introduced during the trial to support plaintiff's claim for lost benefits.

seeks front pay for a period of six years, which is premised on her opinion that it will take her that long to find a job in which she can equal her former earnings. (R. 134.)

■ A plaintiff "must mitigate her damages by seeking employment 'substantially equivalent' to the position [from which] she was [terminated]." *EEOC v. Joe's Stone Crab, Inc.*, 15 F.Supp.2d 1364, 1378 (S.D.Fla.1998)(citing *Weaver*, 922 F.2d at 1526). While a plaintiff has a duty to exercise reasonable diligence to mitigate her damages, the burden is on the defendant to prove a plaintiff's failure to discharge her duty. *Joe's Stone Crab*, 15 F.Supp.2d at 1378. However, even where the defendant fails to rebut plaintiff's evidence, this Court, in the exercise of its duty to render an equitable award of damages for front pay, must also consider what is fair and reasonable under the circumstances. "[A] Title VII damage award should make the claimant whole, not confer a windfall." *Joe's Stone Crab*, 15 F.Supp.2d at 1378.

Plaintiff testified that, had she not been terminated, she would have stayed with defendant until the age of retirement. (R. 133.) She also testified that she applied for approximately thirty jobs with defendant and about twenty jobs elsewhere. (R. 129.) She applied for waitressing jobs, "anything [she] thought [she] was qualified for." (R. 130.) She believes that she was diligent in her efforts to find a job but was unsuccessful in that regard. (R. 130.)

Plaintiff is currently studying to become a computer electronics technician, a program that is being paid for by the State workers' compensation fund, and which she will complete in approximately ten months. (R. 130.) She believes she will make about $8.00 per hour when she finishes the course and that it will take six years for her to catch up to what she would have made in her former position as an air-conditioning refrigeration mechanic. (R. 130).

■ The Court is faced with the issue of whether six years is a reasonable period to award front pay to plaintiff as "make-whole" relief. There was no evidence introduced to corroborate plaintiff's unsupported testimony that she would earn only $8.00 per hour following her graduation as a computer electronics technician, or that it would take six years for her salary to equal what she would have earned with defendant as an air-conditioning refrigeration mechanic. Plaintiff has already been awarded back pay and lost benefits by the jury from the date of her termination through the date of trial, a period of more than a year. Given the relatively short duration of plaintiff's employment with defendant (approximately two-and-one-half years), and given her age, training, the variety of jobs that she considered herself qualified to perform (despite her workers' compensation injury), as well as the retraining she is receiving, the Court finds that front pay should be awarded for a period of two years from the date of trial, which is a reasonable length of time for plaintiff to complete her computer course and to find another comparable job. This determination is based not only on the evidence presented at trial, but also the Court's experience with Title VII employment discrimination cases, *see Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir.1988), and a review of relevant case law. A monetary award of front pay is calculated to end on the date the discrimination victim attains the position she would have been in but for the discrimination. *Joe's Stone Crab*, 15 F.Supp.2d at 1380; *see also James v. Stockham Valves and Fittings Co.*, 559 F.2d 310, 358 (5th Cir.1977)(holding that front pay should be limited to the date a victim of discrimination attains an opportunity to move to his or her "rightful place"), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54

L.Ed.2d 781 (1978). Therefore, the Court awards plaintiff two years of front pay in the amount of $56,160,[2] plus lost benefits in the amount of $9,600, less the income supplement of $350 per month for ten months that plaintiff is now receiving. Thus, the total damage award for front pay is $62,260.

 Defendant has raised two additional objections to any award of front pay. First, defendant has objected to plaintiff's request for front pay on the ground that plaintiff would have been discharged in June of 2001 for independent, non-discriminatory reasons, *i.e.* that she lied to her supervisor about running over her ladder. While defendant is correct that a former employee is not entitled to an award of front pay if the employer can prove that it would have terminated the employee for other non-discriminatory reasons, *see Wallace v. Dunn Constr. Co.*, 62 F.3d 374, 380 (11th Cir.1995), that argument is foreclosed in this case by the jury's verdict. In answers to special interrogatories, the jury specifically found that plaintiff's sex or gender and her complaints of discrimination were substantial or motivating factors that prompted defendant to discharge her or take other adverse employment action against her. (Special Verdict Form II, ¶ 1; III, ¶ 1.) The jury also found that defendant would not have discharged plaintiff or taken other adverse employment actions against her for other non-discriminatory reasons, in the absence of its consideration of her sex or gender. (Special Verdict Form II, ¶ 2.)

 Second, defendant argues that an award of front pay is not warranted because front pay is a "special remedy" warranted only by "egregious circumstances," not shown here. (Def.'s Mem. at 4.) Although the Eleventh Circuit has so held in cases brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a, *see Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1417 (11th Cir.1998); *Lewis v. Federal Prison Industries, Inc.*, 953 F.2d 1277, 1281 (11th Cir.1992), remedies under the ADEA are modeled after the Fair Labor Standards Act,[3] not 42 U.S.C. § 1981a. *See* 29 U.S.C. § 626(b), *Lorillard v. Pons*, 434 U.S. 575, 579, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). In Title VII cases, the Eleventh Circuit has clearly stated that "prevailing Title VII plaintiffs are *presumptively* entitled to either reinstatement or front pay." *Weaver*, 922 F.2d at 1528 (emphasis added); *see also W & O, Inc.*, 213 F.3d at 619. The "egregiousness" standard espoused by defendant cannot be squared with the Eleventh Circuit's directive of "presumptive" entitlement. *But see Reiner v. Family Ford, Inc.*, 146 F.Supp.2d 1279, 1288–89 (M.D.Fla.2001)(adhering to the "egregious circumstances" standard in a Title VII case). As discussed above, reinstatement is clearly the preferred remedy. But where, as here, extenuating circumstances render reinstatement unfeasible, front pay should be awarded. Therefore, based on controlling precedent of the Eleventh Circuit in Title VII cases, this Court holds that a finding of "egregious circumstances"

---

2. Because the Court has not included a cost-of-living adjustment in this figure, the Court also has not reduced this award of front pay to its present value. *See Virgo*, 30 F.3d at 1364.

3. As the Supreme Court discussed in *Lorillard*, 434 U.S. at 584, 98 S.Ct. 866, while there are "important similarities" between Title VII and the ADEA, "to be sure, both in their aims—the elimination of discrimination

from the workplace—and in their substantive prohibitions," there are "significant differences" in the remedial and procedural provisions of the two statutes. *See Villescas v. Abraham*, 311 F.3d 1253, 1260 (10th Cir.2002)(discussing the differences in the remedial schemes of the two laws); *Kulling v. Grinders for Industry, Inc.*, 115 F.Supp.2d 828, 849 (E.D.Mich.2000)(same).

is not necessary to support a front-pay award.

## II. Prejudgment Interest

 Additionally, plaintiff seeks an award of prejudgment interest on the jury's award of back pay and benefits. The award of prejudgment interest on back pay to a prevailing plaintiff is an equitable remedy, committed to the sound discretion of the trial court. *George v. GTE Directories Corp.*, 114 F.Supp.2d 1281, 1300 (M.D.Fla.2000). Title VII authorizes prejudgment interest as part of the backpay remedy, which is a "manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination." *Loeffler v. Frank*, 486 U.S. 549, 557, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)) (internal quotation marks omitted). "An award of prejudgment interest adjusts the back pay award for inflation and reflects the present day value of income that should have been paid to the claimant in the past." *Joe's Stone Crab*, 15 F.Supp.2d at 1379.

Although plaintiff has requested prejudgment interest, she has not suggested an appropriate rate. Defendant does not dispute plaintiff's entitlement to prejudgment interest "[i]f a correct figure for lost wages could be determined," (Def.'s Mem. at 4), but argues that the correct rate is 1.32% based upon 28 U.S.C. § 1961(a), the average one-year constant maturity Treasury yield, for the calendar week preceding the date of the judgment.

The decisions of the Eleventh Circuit are less than clear as to the proper rate of prejudgment interest that should be employed in a Title VII case. In *Equal Employment Opportunity Commission v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir.1987), the Court held that, in considering which interest rate should govern an award of prejudgment interest in a Title VII case, courts should look to the National Labor Relations Act ("NLRA") for guidance. Since 1977, the National Labor Relations Board ("NLRB") has adopted the "IRS prime rates and has rejected the traditional flat six percent interest rate." *Guardian Pools*, 828 F.2d at 1512 (internal citations omitted). The Court found this approach to be the correct one and directed the district court to recalculate the prejudgment interest award "based on the IRS prime rates" that prevailed during the period of the discrimination. *Guardian Pools*, 828 F.2d at 1512. The NLRB decision cited by the Court referenced 26 U.S.C. § 6621[4] as the

---

**4.** Section 6621(a) provides in relevant part:

(a) General rule.—

(1) Overpayment rate.—The overpayment rate established under this section shall be the sum of—

(A) the Federal short-term rate determined under subsection (b), plus

(B) 3 percentage points (2 percentage points in the case of a corporation).

To the extent that an overpayment tax by a corporation for any taxable period ... exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points."

(2) Underpayment rate.—The underpayment rate established under this section shall be the sum of—

(A) the Federal short-term rate determined under subsection (b), plus

(B) 3 percentage points.

source for the IRS prime rate. *See Florida Steel Corp.*, 231 NLRB 651, 96 L.R.R.M. 1070 (N.L.R.B. Aug.25, 1977) (adopting the sliding interest scale set forth in 26 U.S.C. § 6621, charged or paid by the Internal Revenue Service on the underpayment or overpayment of federal taxes), *enforcement denied on other grounds sub nom., NLRB v. Florida Steel Corp.*, 586 F.2d 436, 451 (5th Cir.1978).

Subsequently, in *McKelvy v. Metal Container Corp.*, 854 F.2d 448, 453 (11th Cir. 1988), an ADEA case, the Eleventh Circuit, citing *Guardian Pools*, reversed the district court's award of prejudgment interest that had been based upon the state statutory rate of interest and remanded the case with instructions that prejudgment interest on back-pay awards "depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961." *See also George v. GTE Directories Corp.*, 114 F.Supp.2d 1281, 1300 (M.D.Fla.2000) (holding that the IRS prime rates calculated in accordance with 28 U.S.C. § 1961 applied to a prejudgment interest award in a Title VII case). The *McKelvy* Court, however, did not specify which subsection of § 1961

to apply. Subsection (a) provides for post-judgment interest "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."[5] (It is based upon those rates that defendant contends this Court should award prejudgment interest at the rate of 1.32%.) Subsection (c)(1) of § 1961, however, provides that § 1961 shall not apply to any judgment in any court with respect to any internal revenue tax case, in which interest shall be allowed at the underpayment rate or the overpayment rate established under § 6621 of the Internal Revenue Code of 1986 (the section referenced by the Court in *Guardian Pools*).

On remand, the district court in *McKelvy*, confronted with the dilemma of which subsection of § 1961 to apply, held that by applying subsection (c)(1), it could reconcile the instructions from the Eleventh Circuit to apply § 1961 and the IRS prime rate. This was also in keeping with the Court's prior holding in *Guardian Pools*. *McKelvy v. Metal Container Corp.*, 125

---

(b) Federal short-term rate.—For purposes of this section—

 (1) General rule.—The Secretary shall determine the Federal short-term rate for the first month in each calendar quarter. . . .

*See also* 26 C.F.R. § 301.6621–1. The Federal short-term rates as determined by the Secretary for the period December 5, 2001, to February 6, 2003 are as follows:

| Date | Underpayments | Overpayments | Overpayments (Corp.) |
| --- | --- | --- | --- |
| 10/1/01–12/31/01 | 7 | 7 | 6 |
| 1/1/02–12/31/02 | 6 | 6 | 5 |
| 1/1/03–3/31/03 | 5 | 5 | 4 |

Rev. Rul.2002–70, 2002–50 I.R.B. 958 (Dec. 16, 2002).

**5.** Without referencing either subsection, it appears that the Court in *George v. GTE Directories Corp.* applied subsection (a) of § 1961. The Court stated that it was awarding prejudgment interest at the rate of 5.6%, which the plaintiff represented to be the average IRS prime rate for the period November 1996 through March 2000. 114 F.Supp.2d at 1300. This Court expresses no opinion as to the accuracy of this figure. However, in comparing the one-year Treasury constant maturities rates with the IRS overpayment and underpayment rates for that period, it appears to the Court that the plaintiff in *George* was using the one-year Treasury constant maturities rates under 28 U.S.C. § 1961(a). *See also Clemmons v. Domino's Pizza, Inc.*, 73 FEP Cases 1743, 1996 WL 901966 (M.D.Fla.1996) (applying the tables at the end of § 1961, the "52–week T–Bill Table of Changes," to determine prejudgment interest on a back-pay award under Title VII), *aff'd*, 132 F.3d 1459 (11th Cir.1997) (table).

F.R.D. 179, 181 (M.D.Fla.1989). "The Court is of the opinion that the direction from the court of appeals regarding the prejudgment interest rate is to apply the IRS method of calculation in § 6621, using the IRS prime rate prior to the time of amendment [1986] and the underpayment rate thereafter." *McKelvy*, 125 F.R.D. at 181; *see also Joe's Stone Crab*, 15 F.Supp.2d at 1379 (holding that prejudgment interest should be calculated based on the IRS prime rates and citing with approval *Taylor v. Central Pa. Drug & Alcohol Servs. Corp.*, 890 F.Supp. 360, 369 (M.D.Pa.1995), which applied the overpayment rates pursuant to 26 U.S.C. § 6621(a)(1)).

There has been no further guidance from the Eleventh Circuit on the question of the appropriate rate of prejudgment interest to apply to a back-pay award in a Title VII case. However, in a case brought under the Employee Retirement Income Security Act ("ERISA"), *Smith v. American International Life Assurance Co. of New York*, 50 F.3d 956, 958 (11th Cir.1995), the Eleventh Circuit held that because district courts have discretion to award prejudgment interest under ERISA, they are not required to use § 1961(a) in computing such interest. That section, the Court held, "only mandates the rate for post-judgment interest; it does not speak to pre-judgment rates." *Smith*, 50 F.3d at 958. The Court then affirmed the district court's use of state statutory interest rates.

Because the award of prejudgment interest lies in the sound discretion of this Court, and based on the district court's analysis in *McKelvy*, 125 F.R.D. at 181, this Court holds that prejudgment interest should be awarded based upon the average IRS prime underpayment rate for the period 2001 to 2003, or 6.0%, pursuant to 26 U.S.C. § 6621(a)(1). Accordingly, prejudgment interest shall be awarded on the sum of $55,000 from December 5, 2001, until the date of judgment at the rate of 6.0%.

### *Conclusion*

For the reasons set forth above, Plaintiff's Motion for Prejudgment Interest and Front Pay [Doc. # 68] is GRANTED to the extent that Plaintiff shall be awarded front pay in the amount of $62,260 and prejudgment interest at the rate of 6.0% on her back pay award of $55,000, which shall be calculated from December 3, 2001, until the date of Judgment.

Plaintiff's counsel is directed to file her motion for attorney's fees within 30 days of the date of this ruling.