**Simon GEORGE, Plaintiff,**

v.

**GTE DIRECTORIES CORP.,
Defendant.**

No. 98–1862–CIV–T–24A.

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 28, 2000.

Nicholas E. Karatinos, Steeley & Karatinos, P.A., St. Petersburg, FL, Anna S.

Lykoudis, Lykoudis & Assoc., Tampa, FL, for Plaintiff.

John W. Campbell, V. Ross Spano, Malfitano, Campbell & Dickinson, Tampa, FL, for Defendant.

## ORDER

RODRIGUEZ, Senior District Judge.[1]

This matter is before the Court upon the motions of Plaintiff Simon George ("Plaintiff") for (1) attorneys' fees in the amount of $139,932.50 and $7,629.47 in costs; and (2) prejudgment interest in the amount of $1,435.00; and the motion of Defendant GTE Directories Corp. ("Defendant") for an extension of time to file its opposition to Plaintiff's motion for attorneys' fees and costs. For the reasons discussed on the record of June 27, 2000 and set forth below, Plaintiff's motion for attorneys' fees and costs will be granted in part and denied in part; Plaintiff's motion for prejudgment interest will be granted; and Defendant's motion for an extension of time will be granted.

## I Background

Plaintiff worked as an electrician in the Defendant's printing plant from December 1994 until he was terminated on September 16, 1996. Plaintiff, who is African-American, alleged that the Defendant terminated his employment and treated him less favorably than white employees with respect to "discipline, job opportunities (overtime), pay and other terms and conditions of employment" because of his race. He initiated the instant action by filing a three count Complaint against the Defendant alleging (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981; (2) retaliation in violation of Title VII and § 1981; and (3) disability discrimination in

violation of the Family Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. § 2601. By order dated February 4, 2000 (the "February Order"), the Court granted the Defendant's motion for summary judgment on the Plaintiff's FMLA claim. Thus, only the Plaintiff's Title VII and § 1981 claims remained for trial.

On March 28, 2000, after a six-day trial, the jury returned a verdict for the Plaintiff on his Title VII retaliation claim and for the Defendant on Plaintiff's claim of race discrimination. The jury awarded the Plaintiff $7,500 in back pay, $1.00 in compensatory damages, and $7,500 in punitive damages, for a sum of $15,001.00.

Plaintiff filed an application for attorneys' fees and costs pursuant to 42 U.S.C. §§ 1981a and 1988 and 42 U.S.C. § 2000e–5(k). The fee application seeks attorneys' fees in the amount of $139,932.50 and related costs in the amount of $7,629.47.[2] The Defendant filed an opposing brief and affidavits in opposition to the application, claiming that the requested fees are excessive, redundant and unnecessary and should be reduced accordingly. On June 27, 2000, the Court heard oral argument on the Plaintiff's fee application. *See* Transcript of June 27, 2000 Proceedings (hereinafter "Tr.").

## II Plaintiff's Motion for Attorney Fees

The Eleventh Circuit has adopted a three-pronged approach to assessing a plaintiff's fee application under § 1988. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir.2000). Under this approach, the threshold issue is whether the plaintiff qualifies as a "prevailing party" within the meaning of the statute. The second step requires the court to calculate the "lodestar" by multiplying the reasonable hourly rate times the number

---

1. Hon. Joseph H. Rodriguez, Senior Judge of the United States District Court for the District of New Jersey, sitting by designation.

2. Attorney Karatinos seeks $67,443.75 for 299.75 hours at $225 per hour and an addi-

tional $2,700.00 for 12 hours devoted to preparation of the fee application. Attorney Lykoudis requests $69,478.75 for 448.25 hours worked at a rate of $155.00 per hour, and an additional $310.00 for two hours spent preparing the fee application.

of hours reasonably expended on the litigation. *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Third, the court must determine whether an adjustment to the lodestar is necessary "to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Dillard*, 213 F.3d at 1353 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). A fee applicant bears the burden of proving the reasonableness of the amount requested. Although a district court has broad discretion in determining the amount of an award, it must articulate the reasons underlying its decisions to allow for appellate review. *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1304 (11th Cir.1988).

In this case, the Defendant's opposition implicates the second and third prongs of this fee award calculus. Specifically, the Defendant challenges the reasonableness of both the hourly rates and number of hours claimed by the Plaintiff and argues that a downward adjustment is necessary to reflect the Plaintiff's limited success.

## A Reasonable Fee Award: the Lodestar

The threshold step in determining a reasonable fee award is calculation of the lodestar, which is the product of the reasonable hourly rate and the number of hours reasonably expended. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999). The fee applicant bears the burden of producing "satisfactory evidence" that both the requested hourly rate and number of hours expended are reasonable. *Norman*, 836 F.2d at 1303. Where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge and observations. *Norman*, 836 F.2d at 1303 (citing *Davis v. Bd. of Sch. Comm'rs of Mobile County*, 526 F.2d 865, 868 (5th Cir.1976)).

## 1 Reasonably hourly rate.

As the first part of the lodestar equation, the Court must determine a "reasonable hourly rate" of compensation. Here, the Plaintiff seeks a rate of $225 per hour for "lead counsel" Karatinos and $155 per hour for Attorney Lykoudis. The Defendant contends that these rates are out of line with the prevailing market rates in Tampa, FL for attorneys with comparable skill and experience in similar cases.

"[A] reasonable hourly rate ... is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541). A fee applicant bears the burden of producing "satisfactory evidence" that the requested rate is consistent with the prevailing market rate. *Barnes*, 168 F.3d at 427. Satisfactory evidence includes opinion evidence of reasonable rates or direct evidence of rates charged by lawyers with similar skill under similar circumstances. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (citing *Norman*, 836 F.2d at 1299). "[A] civil rights case involving a single plaintiff may require analogies to other areas of representation with the absence of 'ongoing relationship between the attorney and the client.'" *Duckworth*, 97 F.3d at 1396 (citing *Norman*, 836 F.2d at 1300). Ultimately, determination of the reasonable hourly rate is within the sound discretion of the Court.

### a Attorney Nicholas Karatinos

The Plaintiff requests a rate of $225 per hour for the services of Attorney Karatinos. The Defendant opposes this rate, arguing that the reasonable hourly rate for an attorney in the Tampa area in a similar case with comparable skills, experience and reputation ranges from $150 to $165. Def. Br. at 6.

Both parties offer the opinions of experienced litigators in the Tampa, Florida area to support their respective positions. In

the Plaintiff's two supporting affidavits, each attorney states that an hourly rate of between $225 and $275 is reasonable for an attorney with Mr. Karatinos' reputation, experience and skill in labor and employment law. *See* Prugh Affidavit ¶ 4 ("As an attorney with over 30 years of legal experience in the field of employment law and labor law, Mr. Karatinos would command an hourly fee in the range of $225 to $275 per hour for service as lead counsel in matters in litigation before the Middle District of Florida."); Chamblee Affidavit ¶ 4 ("Based on my knowledge of fees in this area, the current prevailing market rate for attorneys practicing labor and employment law representing individual clients in the Tampa–St. Petersburg area of the Middle District of Florida, whose skill, experience and reputation are compatible to that of Mr. Karatinos is in the range of $225.00 to $275.00 per hour.").

In contrast, the Defendant offers the affidavits of experienced local counsel who claim that an hourly rate ranging from $150 to $165 would be reasonable for an attorney in the Tampa area with *five years* of experience in labor and employment law. *See* Campbell Affidavit ¶¶ 3–4 (stating that Mr. Karatinos' experience translates into five years' "useful trial experience" and estimating that hourly rate of $150 would be appropriate); Hanley Affidavit ¶ 3 (opining that "reasonable hourly rate for an attorney with five years of experience in the area of employment law in this market is $150.00 to $165.00").[3]

In light of the foregoing, the Court finds that the Tampa, Florida area is the prevailing legal market for purposes of establishing a reasonable hourly rate. In addition, the Court finds that the rate for an attorney in a similar case with the skill, reputation and experience equivalent to those of Mr. Karatinos ranges from $150 to $275 per hour. To determine where on this range Mr. Karatinos' rate should fall in this litigation, the Court will evaluate the facts of this case in terms of the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), called into doubt by *Hensley,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[4] *Loranger v. Stierheim,* 10 F.3d 776, 781 n. 6 (11th Cir.1994) (noting that although *Johnson* factors were subsumed into lodestar, they remain relevant to determination of reasonable fee).

*Time and Labor Required*

The Plaintiff argues that this factor weighs in favor of a higher rate because "[t]he skill and experience required to draft jury instructions on new law, such as punitive damages under 42 U.S.C. § 1981(a) is high. Such work demands counsel who has a wide breadth of experience with labor law."[5] Pl. Br. at 10. The facts of the case, and this Court's own experience, belie this assertion. To the contrary, the Court finds that this case constituted a relatively simple and straightforward employment discrimina-

---

**3.** The Court notes that Mr. Campbell represented the Defendant during the course of this litigation, and that Mr. Hanley is not personally familiar with the work of Mr. Karatinos in this case or in the past. *See Loranger v. Stierheim,* 10 F.3d 776, 781 (noting that "satisfactory evidence" means "more than the affidavit of the attorney performing the work").

**4.** These factors include: (1) the time and labor required; (2) the novelty and difficulty of the case; (3) the skill required to perform the legal services; (4) preclusion of other employment due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time con-

straints; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

**5.** As support for this assertion, Plaintiff's counsel attached the punitive damages charge from the jury instructions the Court delivered at trial. The Court notes, however, that this version of the punitive damages charge is the product of *considerable* edits and revisions by the Court and bears little resemblance to the charge originally proposed by the Plaintiff.

tion and retaliatory discharge case involving one plaintiff and one defendant at a single site of employment.

*Attorney's Experience, Reputation and Ability*

■ The second factor considered by the Court is the experience, reputation and skill exhibited by Mr. Karatinos during the course of the litigation. Here, the Plaintiff suggests that Mr. Karatinos should be compensated at a higher rate due to his almost thirty years of experience in labor and employment law at the NLRB. The Defendant disagrees, arguing that such experience is not relevant to litigation of an employment discrimination case in federal court. Thus, Mr. Karatinos should be credited with at most five years of relevant experience.

During oral argument on June 27, 2000, Mr. Karatinos offered a detailed description of his many and varied responsibilities during his 27 year tenure at the NLRB. The record shows that he held primarily executive, administrative or managerial positions which afforded him limited direct trial experience in federal district court, and even less experience litigating employment discrimination cases under Title VII and § 1981. Tr. at 3–6. Thus, the Defendant is correct that his experience at the NLRB does not perfectly correspond to his ability to litigate a trial in federal court.

> Legal skill is a several faceted concept and there is no assurance that a level of attainment in one facet means that the practitioner will or has similarly attained in all facets. Legal skill may be a function of experience, but that is not always the case.... The underpinning for these facets of legal skill is knowledge, knowledge of trial practice and knowledge of the substantive law. A lawyer who has to educate himself generally in either or both of these two areas may ultimately be as effective as a specialist, but he has

no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.

*Norman*, 836 F.2d at 1300–01. Although the abilities Mr. Karatinos developed during his tenure at the NLRB do not directly translate into a comparable degree of skill in this case, his work at the NLRB was indisputably significant. Moreover, those abilities have been sharpened by his general litigation experience over the last five years.[6]

In light of the foregoing, the Court finds that the knowledge and skill demonstrated by Mr. Karatinos at trial reflected a level of experience somewhere between the extremes suggested by the parties. *See Norman*, 836 F.2d at 1300 (noting that experience and reputation "are only proxies for skill"); *Johnson*, 488 F.2d at 718 ("Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation. An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience. Longevity per se, however, should not dictate the higher fee. If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar."). Thus, for a final determination of Mr. Karatinos' reasonable hourly rate, the Court must rely on its own observations and expertise. In doing so, the Court is mindful that it "is itself an expert and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1300).

---

6. Mr. Karatinos' practice in the Tampa area has concentrated in the areas of labor and employment litigation, federal administrative law and admiralty law. At oral argument, Mr. Karatinos indicated that the majority of his employment discrimination cases have settled before trial.

*Time Constraints*

■ The Plaintiff emphasizes that Attorneys Karatinos and Lykoudis were retained "shortly before trial.... Since the bulk of the requested hours involved trial preparation, a premium rate is justified." Pl. Br. at 10.

The Plaintiff was originally represented by Nora Bergman, Esq., who withdrew from the case on September 3, 1999. Anna Lykoudis, Esq., who was admitted to the bar in October 1998, entered her appearance with the Court on or about October 13, 1999. Ms. Lykoudis subsequently sought the assistance of Attorney Karatinos, who filed his formal entry of appearance on or about January 19, 2000. The trial took place in March.

As the foregoing illustrates, the record supports the Plaintiff's contention that Attorneys Karatinos and Lykoudis were operating under tight time constraints. With regard to Mr. Karatinos, the bulk of his time was spent on trial preparation and the trial itself. On the other hand, the Court reiterates that these time constraints must be balanced against the relatively simple and straightforward nature of the case.

*Preclusion of Other Employment.*

■ The Plaintiff argues that a higher rate is warranted because litigation of this case precluded Attorneys Karatinos and Lykoudis from undertaking other employment. Specifically, the Plaintiff contends:

> Both Attorney Karatinos and Attorney Lykoudis maintain separate, independent law practices with the customary overhead of rent/mortgage, insurance, supplies, utilities, on-line legal research etc. To prepare for and attend a six-day trial is financially burdensome to small firms. In the interim, other work must be placed on hold and the attorneys cannot meet with prospective clients. During that time, bills need to be paid and no income-generating work is being performed outside the instant case. Preclusion of other employment has historically been a consideration in awarding attorney's fees.

Pl. Br. at 10. Although the foregoing argument may be relevant in principle, the Plaintiff has offered no evidence to support the claim that his attorneys' work on this case precluded either Mr. Karatinos or Ms. Lykoudis from accepting new clients or undertaking other work. The burden was on the Plaintiff to support his claims with satisfactory evidence. In the absence of such evidence, the Court declines to award fee counsel a higher rate based solely on the recitation of general principles of law.

*Undesirability of the Case*

The Court does not find, and the Plaintiff does not contend, that this case was "undesirable" in the sense contemplated by *Johnson.*

*Nature and Length of Relationship With Client*

Here, Attorney Karatinos had no prior relationship with the Plaintiff and it appears that the Plaintiff will be a one-time client. Thus, the reduced rate which attorneys generally award to regular and ongoing clients is not applicable in this case. *See Duckworth,* 97 F.3d at 1396.

*Fixed or Contingent Fee*

Where a fee is contingent in nature, as it was in this case, so that no compensation is guaranteed, an enhancement of the hourly rate may be appropriate. *See Loranger,* 10 F.3d at 781 (affirming district court's upward adjustment of rate to reflect difficulty of case, contingent fee and time constraints).

*Awards in Similar Cases*

As support for its proposed hourly rates, the Plaintiff points to the hourly rates awarded by courts in other jurisdictions in "similar cases." Pl. Br. at 10–11. Contrary to the Plaintiff's assertions, however, these cases provide the Court with little guidance. The Tampa legal market is the relevant market for determining a reasonable hourly rate in this case. Moreover, the Court notes that the cases cited by the Plaintiff, to the extent they are applicable,

support a rate that is somewhat *lower* than the rate proposed by Plaintiff's counsel.

 In sum, after considering the foregoing *Johnson* factors and making an independent evaluation of the record and the skill demonstrated by Mr. Karatinos at trial, the Court finds $200.00 to be the reasonable hourly rate of compensation for Attorney Karatinos in this case. This rate reflects the prevailing market rate in the Tampa, FL legal community for attorneys in similar cases with comparable skill, experience and reputation.

### b Attorney Anna Lykoudis

 Plaintiff requests an hourly rate of $155 for the services of Ms. Lykoudis. The Plaintiff makes the same arguments to justify this rate that he previously raised with respect to Mr. Karatinos' compensation.[7] Again, he primarily relies upon the affidavits of Attorneys Prugh and Chamblee. In his affidavit, Mr. Prugh proposes a rate of $155 per hour, whereas Mr. Chamblee suggests a range of $125 to $160 per hour. Although both attorneys suggest that these rates are appropriate for an attorney with two years' experience trying her first case in federal court, each admits that he has never met Ms. Lykoudis and is unfamiliar with her work.

In opposition, the Defendant offers the affidavits of Mr. Campbell and Mr. Hanley, in which each attorney suggests that an hourly rate of $90 to $100 per hour is reasonable for an attorney in the Tampa area with one year of experience who is trying her first case in federal court. *See* Hanley Affidavit ¶ 5; Campbell Affidavit ¶ 5; Def. Br. at 4 n. 4 (noting that Ms. Lykoudis was admitted to the bar in October 1998). As further support for this range, Defendant argues that Ms. Lykoudis exhibited poor lawyering skills throughout the litigation.

The Court had the opportunity to observe firsthand Ms. Lykoudis' abilities during trial. These observations, along with the Plaintiff's own concessions in his brief, and by Mr. Karatinos during oral argument, confirm that her skill at the time was quite limited. Of course, such a finding is not unexpected from an attorney with approximately one and one-half years of experience (at the time of trial) who has never tried a case in federal court. On the other hand, although the Plaintiff retained Ms. Lykoudis earlier in the litigation than Mr. Karatinos, her formal entry of appearance was not filed with the Court until mid-October 1999, only six 6 months before trial.

After reviewing the evidence offered by both sides, and observing the skill demonstrated by Ms. Lykoudis during the litigation, the Court finds that a rate of $110 per hour is reasonable for an attorney with comparable skill and experience who is litigating her first employment discrimination case in federal court.

### 2. Reasonable Number of Hours

Having determined the reasonable hourly rate for the services of Attorneys Karatinos and Lykoudis, the Court turns to the second half of the lodestar equation and the reasonable number of hours expended on the litigation.

The Supreme Court requires fee applicants to exercise "billing judgment." *Hensley*, 461 U.S. at 434, 447, 103 S.Ct. 1933. To reflect proper billing judgment, attorneys "must exclude from their fee applications excessive, redundant or otherwise unnecessary [hours] . . . which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301)

---

7. With the exception of the matters discussed below, many of the underlying facts relevant to a determination of a reasonable hourly rate are equally applicable to both attorneys. Accordingly, the Court sees no need to set out in

detail its analysis of Ms. Lykoudis' hourly rate in light of the *Johnson* factors. The Court notes, however, that its consideration of those factors is reflected in the rate awarded.

(internal citations and quotation marks omitted). The fee applicant bears the burden of adequately documenting the appropriate number of hours. *Norman*, 836 F.2d at 1303. Such documentation consists of detailed records of the attorneys' time, stating with particularity the time spent on different claims and tasks. *See Hensley*, 461 U.S. at 437, 103 S.Ct. 1933 (noting that "the general subject matter of time expenditures should be set out with sufficient particularity that the district court can assess time claimed for each activity"). "Because reducing the hours claimed requires the court's precision, the law in this circuit commands that both the proof of the hours spent in litigation and any corresponding objections posed be voiced with a similar exactitude." *Duckworth*, 97 F.3d at 1397 (citing *Norman*, 836 F.2d at 1301).

In this case, Plaintiff claims that Mr. Karatinos devoted 299.75 hours to the case, plus an additional 12 hours of time to preparing the fee application. In addition, the Plaintiff contends that Ms. Lykoudis devoted 448.25 hours to the case, with an additional two hours spent on the fee application. The Defendant argues that these figures are excessive, redundant and unnecessary and should be excluded or reduced substantially. Specifically, the Defendant raises the following objections: (a) fee counsel inappropriately billed for travel time; (b) Attorneys Karatinos and Lykoudis billed for redundant and duplicative work; (c) Attorney Karatinos inappropriately recorded his time in fifteen and thirty minute billing increments; (d) Attorney Lykoudis billed for time not spent in furtherance of the litigation; (e) Plaintiff did not submit third-party verification; (f) Plaintiff should not recover attorneys' fees for time spent on discrete and unsuccessful claims; (g) Plaintiff should not recover attorneys' fees for time spent on "futile and unnecessary efforts."

The Court addresses each of these objections in turn.

### a Travel Time

■ The first objection raised by the Defendant to the number of hours billed by Mr. Karatinos and Ms. Lykoudis pertains to the time each attorney billed for travel. The Defendant argues that these hours should be excluded because "[a]n attorney's travel time is not recoverable under a fee shifting statutory provision." Def. Br. at 6. As support for this unequivocal assertion, the Defendant cites to three district court decisions from other circuits. See Def. Br. at 6–7 (citing to *DeVito v. Hempstead China Shop, Inc.*, 831 F.Supp. 1037, 1045 (E.D.N.Y.1993); *Ramos v. Lamm*, 539 F.Supp. 730, 745 (D.Col.1982); *Rosenberger v. Rector and Visitors*, 1996 WL 537859, * 6 (W.D.Va.1996)). Defendant's reliance on these cases is both misplaced and misleading.

Although the Eleventh Circuit has not expressly addressed the issue, the district courts in this Circuit have regularly held that reasonable travel time is compensable at a regular hourly rate. *See, e.g., Dillard v. City of Foley*, 995 F.Supp. 1358,1370–71 (M.D.Ala.1998) (reducing but not denying travel time of out-of-state counsel where case could have been litigated by able local counsel); *Gay Lesbian Bisexual Alliance v. Sessions*, 930 F.Supp. 1492, 1497 (M.D.Ala.1996) (awarding compensation for travel time at usual hourly rate); *Mallory v. Harkness*, 923 F.Supp. 1546, 1557 (S.D.Fl.1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997) (compensating attorney for reasonable travel time at regularly rate of $275 per hour); *Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 771 F.Supp. 1190, 1192 (S.D.Fl.1991) (declining to disallow travel time to Miami of Ft. Lauderdale attorney where attorney was from neighboring district and fees were "no greater than the travel time that many attorneys working within the Miami division of this court would face when traveling to hearings in downtown Miami"); *American Mobile Systems, Inc. v. Ware*, 1992 WL 167262, * 4 (M.D.Fl.1992) (refusing to de-

duct travel time to Florida cities reasonably incurred by local attorney).

In light of these authorities, the Court will award compensation at a regular hourly rate for reasonable travel time billed by Attorneys Karatinos and Lykoudis in furtherance of this litigation. As discussed below, travel time that appears excessive or related to redundant or unnecessary tasks will be excluded as unreasonable.

**b Redundant Billing**

█ Defendant claims that Mr. Karatinos and Ms. Lykoudis excessively and inappropriately billed for redundant and duplicative services. The Defendant offers two examples of such billing abuses. First, the Defendant claims that both attorneys unnecessarily attended a meeting with St. Petersburg Human Relations Division Investigator Donna Ream on January 21, 2000 in order to prepare Ms. Ream's affidavit. After both billed time for attending the meeting, however, Ms. Lykoudis prepared the affidavit. Therefore, Mr. Karatinos should not be compensated for his duplicative services. Second, although both attorneys attended Ms. Ream's deposition on February 3, 2000, Mr. Karatinos conducted the deposition and Ms. Lykoudis did not participate. Therefore, the Defendant claims, Ms. Lykoudis should not be compensated for the time spent attending the deposition.

Although "[t]here is nothing inherently unreasonable about a client having multiple attorneys," *Barnes*, 168 F.3d at 432 (quoting *Norman*, 836 F.2d at 1302), courts should exclude hours performed by two attorneys that are unnecessary and redundant. *See Duckworth*, 97 F.3d at 1397–98 (reducing the hours of each attorney where both attorneys attended all depositions). To recover for tasks performed by more than one attorney, the burden is on the fee applicant to show that the time spent by each attorney "reflects the distinct contribution of each lawyer to the case and [is] the customary practice of multiple lawyer litigation." *Barnes*, 168 F.3d at 432 (citations omitted).

In this case, the burden was on the Plaintiff to show the distinct contributions of Mr. Karatinos and Ms. Lykoudis on January 21 and February 3, 2000. Despite having the opportunity to address these issues and supplement the record during oral argument on June 27, 2000, the Plaintiff did not adequately carry this burden. The only explanation offered by the Plaintiff to support this seemingly redundant and inappropriate billing is Mr. Karatinos' statement that Ms. Lykoudis had to be present during the February 3, 2000 deposition because he had just joined the case. Tr. at 8–9. However, Mr. Karatinos was previously present during the January 21, 2000 meeting with Ms. Ream to prepare her affidavit. He offers no explanation for the presence of both attorneys at that time. Moreover, Ms. Ream was never called to testify as a witness at trial, nor was her deposition admitted into evidence. Accordingly, the Court will exclude the time Mr. Karatinos devoted to the interview on January 21, 2000, and the time Ms. Lykoudis spent attending the deposition on February 3, 2000.

Unfortunately, the nature of fee counsel's billing records in this case makes application of this decision difficult. The records for each attorney on January 21, for example, contain general entries in which each attorney lumps together multiple legal services, including travel time. It appears, however, that on January 21, 2000, Mr. Karatinos billed 5 hours for work on Plaintiff's case, such as research, writing and meeting with Donna Ream and Ms. Lykoudis. Pl. Br. Ex. C. *See also* Pl. Br. Ex. D at 9 (January 21 entry from Lykoudis records reflecting 9.5 hours for meeting "with attorney Karatinos and Donna Ream. Prepared Ms. Ream's second affidavit for the Plaintiff's Motions in Limine. Traveled to St. Pete."). Because the nature of his records makes it unclear what percentage of the hours billed by Mr. Karatinos were attributable to the meeting with Ms. Lykoudis and Ms. Ream, the Court will exclude fifty percent (50%) of

his time from January 21, 2000, or 2.5 hours, for a subtotal of 297.25 hours.

Although Ms. Lykoudis' billing records are generally more specific, her entries for February 3, 2000 suffer from similar problems. Although she has more than one entry on that date, the relevant entry of 7.5 hours contains the description "[p]repared for and attended Donna Ream's deposition. Met with Ms. Ream to discuss issues in case. Traveled to St. Petersburg." Pl. Br. Ex. D at 11. In contrast, Mr. Karatinos billed 3 hours for a meeting with Ms. Lykoudis and Ms. Ream to prepare for the deposition and three hours for the deposition itself. Pl. Br. Ex. C. Although it is understandable that Ms. Lykoudis' presence during either the meeting or deposition might be beneficial given her familiarity with the case, her presence during both seems duplicative and excessive. As stated above, the Plaintiff has failed to adequately identify for the Court her distinct contribution at these times. Therefore, the Court will disallow half of Ms. Lykoudis time, on February 3, 2000, or 3.75 hours.

### c "Minimum" Billing Increments

The third objection raised by the Defendant is that Attorney Karatinos inappropriately rounded his time off in quarter- and half-hour minimum billing increments rather than recording the actual time spent on specific tasks. Specifically, Defendant claims that of the seventy entries in his billing statement, sixty-eight of those entries are listed in half-hour increments while two are reported in fifteen minute intervals.

Although an attorney "is not required to record in great detail how each minute of his time was expended," an attorney "at least should identify the general subject matter of his time expenditures." *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. 1933. Although the Eleventh Circuit has yet to confront this issue, our sister courts in this Circuit and other jurisdictions have reduced fee awards where the entries are rounded off to the nearest fifteen minutes. *See Ramsey v. State of Alabama Public*

*Service Comm'n,* 2000 WL 426187, *5 (M.D.Al. Apr. 13, 2000) (Thompson, J.) (reducing each time entry recorded in 15 minute intervals by one-eighth of an hour); *Glover v. Heart of America Management Co.,* 1999 WL 450895 at *7 (D.Kan. May 5, 1999) (Vratil, J.) (reducing compensable hours "by the possible windfall created by using quarter-hour increments"); *Fox Valley Laborers Fringe Benefit Funds v. Pride of the Fox Masonry,* 1996 WL 263229 at *1 (N.D.Ill. May 14, 1996) (Shadur, J.) (reducing time entries by one-eighth due to rounding off to quarter hour), *aff'd,* 140 F.3d 661 (7th Cir.1998); *Zucker v. Occidental Petroleum Corp.,* 968 F.Supp. 1396, 1403 (C.D.Cal.1997) (Ideman, J.) (reducing fee award by 5% due to rounding off to quarter hour increments), *aff'd,* 192 F.3d 1323 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1671, 146 L.Ed.2d 481 (2000).

In the case at bar, Mr. Karatinos' practice of recording his time in half-hour intervals is entirely unacceptable under *Hensley* and its progeny. Such inadequate documentation does not provide the Court with sufficient evidence to determine the amount of time actually spent on particular tasks. Moreover, it results in a substantial windfall to Plaintiff's counsel. "[W]here the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." *Norman,* 836 F.2d at 1303. Therefore, the Court will reduce the number of hours charged by Mr. Karatinos to more accurately reflect the reasonable number of hours he expended in this case.

As set forth above, the majority of courts that have confronted this issue have reduced by one-eighth of an hour, or 7.5 minutes, every time entry recorded in fifteen minute intervals. In this case, where Mr. Karatinos billed primarily in 30 minute increments, such an approach would have the effect of denying approximately 50% of his time. The Court finds this result overly harsh. Although Mr. Karati-

nos' billing practices are unacceptably relaxed there is no evidence that he intended to defraud or abuse the fee-shifting provisions of this statute. Accordingly, the Court will reduce his hours (297.25) by thirty percent (30%) to 208.075 hours.

### d Inappropriate Billing

The Defendant argues that Attorney Lykoudis billed for services which were inappropriately included on the billing statement. First, the Defendant argues that Attorney Lykoudis billed for research she conducted on September 7, 1999 and February 2, 2000 on the issue of whether it is inappropriate or unethical to represent a client who is a potential witness in another client's case. Second, the Defendant claims that on specific dates, Ms. Lykoudis inappropriately billed for administrative and secretarial tasks. Third, Defendant objects to time spent by Ms. Lykoudis on October 8, 1999 traveling to and meeting with Attorney Bailey to discuss Ms. Bailey's withdrawal from the case.

Section 1988 authorizes the recovery of reasonable attorneys fees for time spent "in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933 (citations omitted). Time spent by Ms. Lykoudis researching whether she could represent a witness in a separate and unrelated action is not recoverable. Accordingly, one (1) hour will be excluded from her time.

■ The second objection raised by the Defendant is to the time Ms. Lykoudis devoted to "administrative" and "secretarial" tasks. The Defendant's argument appears to be that hours expended on such tasks are not compensable under a fee shifting statute. The Defendant does not cite, and the Court failed to locate, legal support for this *per se* rule. In the absence of controlling or persuasive authority, the Court declines to accept the Defendant's proposition or to apply it to this case. Even if characterized as "adminis-

trative,"[8] time spent in furtherance of the litigation should be compensable at regular hourly rates. Moreover, Ms. Lykoudis is a sole-practitioner, so that some tasks must necessarily fall to her whereas they might be accomplished by lower-level associates or support staff at larger firms. Finally, the Court's review of the billing records shows that all of the challenged time was devoted to drafting and reviewing communications with the court reporters with regard to this case. Accordingly, the Court will not subtract the challenged time from her records or reduce Ms. Lykoudis' corresponding hourly rate.

The third objection raised by the Defendant is to an entry from October 8, 1999 for Attorney Lykoudis' travel to St. Petersburg for a meeting with Attorney Diane Bailey to discuss Ms. Bailey's "withdrawal" as Plaintiff's counsel. The Defendant argues that "Attorney Bailey never even appeared as counsel of record in this case, so this billing entry is clearly unwarranted." Def. Br. at 10. Although Ms. Bailey never filed an entry of appearance, Attorney Lykoudis' billing records include earlier entries from September 1999 where she met with Bailey to discuss their joint representation of the Plaintiff. *See* Pl.Ex. D. at 1–2 (September 10, 1999: Attorney Lykoudis spoke with Bailey about joint representation; September 15, 1999: met with Bailey and the Plaintiff to sign representation agreements and discuss the case; September 17, 1999: drafted notice of appearance for Attorney Bailey)

These entries reflect that Attorney Lykoudis was in the process of negotiating with Bailey for their joint representation of the Plaintiff. The Defendant does not object to these earlier hours, so the Court will not strike them. *See Duckworth*, 97 F.3d at 1397. Moreover, to the extent it appears that Attorney Lykoudis was seeking to obtain co-counsel for the Plaintiff in

---

**8.** Of course, the time an attorney devotes to general office tasks unrelated to the litigation would not be recoverable as part of a reason-able fee award because such time would be unreasonable to bill to a client. *See Norman*, 836 F.2d at 1301.

furtherance of the litigation, these hours are compensable.

Nonetheless, the record supports the Defendant's unchallenged assertion that Attorney Bailey never filed an appearance with the Court in this matter. As a result, two hours devoted to her "withdrawal" from the case appears excessive, especially where approximately one hour of that time was allegedly spent traveling to and from St. Petersburg. Therefore, the Court will disallow 1.75 hours of the time billed by Ms. Lykoudis on October 8, 1999.

### e Third Party Verification

The Defendant also urges the Court to question the "reasonableness of the hours expended in this case or the propriety of the work done" because the Plaintiff has failed to submit third-party verification. Def. Br. at 10. The Defendant offers no controlling or persuasive authority for this bald proposition. The Court will not strike hours from the Plaintiff's fee application because of the Defendant's unsubstantiated suspicions. The Plaintiff's fee application, including the billing records of Attorneys Karatinos and Lykoudis, was submitted under oath and penalty of perjury. No additional verification is required by the Court.

### f "Futile and Unnecessary Efforts"

The Defendant next contends that Attorney Lykoudis' inexperience caused her to unreasonably devote effort and expense to wasteful tasks.[9] As an example, the Defendant argues that she prepared subpoenas for many witnesses who could not be, and were never, called at trial. In addition, she subpoenaed a large number of records immediately before trial to arguably engage in discovery during the

course of the trial itself. Defendant urges the Court to exclude all of the time spent on such wasteful tasks.

The Defendant does not identify for the Court with any particularity which subpoenaed witnesses or records represent the alleged "futile and unnecessary efforts." As previously stated, the Court cannot indiscriminately slash time from the Plaintiff's application because of general objections by the Defendant. *Duckworth*, 97 F.3d at 1397. Moreover, the Defendant's proposal would have the effect of penalizing Ms. Lykoudis twice for her inexperience. *See* Norman, 836 F.2d at 1301 (noting that hours excluded means "those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel... [O]therwise, an inexperienced or unskillful attorney would face a double penalty. First, his hourly rate would be lowered and second, his time reduced"). The Court finds that the significantly reduced hourly rate awarded by the Court, as well as the elimination of time spent on the Plaintiff's unsuccessful FMLA and discrimination claims, adequately compensates for any wasted effort. Accordingly, the Court will not separately deduct time spent on these tasks. As discussed below, however, the Plaintiff will not be compensated for costs related to unnecessary or unreasonably efforts.

### g Discrete and Unsuccessful Claims

█ The Defendant argues that the Court should deduct the time spent by Attorneys Karatinos and Lykoudis on discrete and unsuccessful claims, specifically Plaintiff's FMLA and race discrimination claims. In addition, the Defendant urges

---

9. The Defendant also alleges that Mr. Karatinos' inexperience resulted in an excessive number of hours expended on certain tasks. Mr. Campbell suggests in his affidavit, for example, that the time billed by Mr. Karatinos for the trial itself is excessive and unreasonable. *See* Campbell Affidavit. However, the arguments Mr. Campbell raises revolve around credibility determinations this Court is unwilling, and finds unnecessary, to make.

The Court observed firsthand Mr. Karatinos' abilities and efforts at trial. The Court is confident that the significant reduction made by the Court in Mr. Karatinos' hourly rate, the reduction for his practice of billing in half-hour increments and other adjustments set forth in this Order, adequately compensate for any excessive time Mr. Karatinos devoted to the trial itself.

the Court to deduct time devoted to Plaintiff's unsuccessful claim for compensatory damages.

In determining the number of reasonable hours expended, the Court should deduct time for discrete and unsuccessful claims. *See Texas State Teachers Assoc. et al. v. Garland Ind. Sch. Dist.*, 489 U.S. 782 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (citing *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). This responsibility requires the Court to identify unsuccessful "claims that were unrelated to the claims on which [t]he [Plaintiff] succeeded" or whether the time spent on the unsuccessful claims may properly "be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (internal citations and quotation marks omitted). Ultimately, how the Court makes this determination and chooses to reflect it in the fee award is left to its discretion. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

Here, the Defendant urges the Court to subtract a percentage of the hours requested to reflect the time spent on unsuccessful claims. In principle, the Court is reluctant to adopt the strict proportionality approach suggested by the Defendant, however. As the Supreme Court observed in *Hensley*,

> a mathematical approach comparing the total number of issues in the case with those actually prevailed upon … provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Hensley*, 461 U.S. at 436 n. 11, 103 S.Ct. 1933. Although the Court is reluctant to adopt the Defendant's rigid approach in a case where the jury awarded punitive damages and at least some of the claims are arguably interrelated, the billing records of Plaintiff's counsel provide the Court with no viable alternative.

As previously discussed, with limited exceptions both Mr. Karatinos and Ms. Lykoudis lump together the legal services they performed on a daily basis. Just as their records fail to articulate the time each attorney devoted to specific tasks, they also fail to identify what entries pertain to particular claims. The Court recognizes that such a task was difficult in this case, where the claims derive, at least in part, from a common set of operative facts. Nonetheless, the Eleventh Circuit has consistently warned that "[i]n a case where part of the attorney's efforts are to go uncompensated, the burden is on the attorney to provide sufficient evidence for the court to make a correct division." *Loranger*, 10 F.3d at 782 (internal quotation marks and citations omitted). Accordingly, the Court will exercise its discretion and reduce the reasonable number of hours worked by the approximate percentage of time devoted to discrete and unsuccessful claims.

*The FMLA claim*

▮ The Plaintiff's Complaint included a claim of disability discrimination in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601. By order dated February 4, 2000 (the "February Order"), the Court granted the Defendant's motion for summary judgment on the Plaintiff's FMLA claim. As a result, the Defendant urges the Court to "exclude one-third of the hours expended up to the date summary judgment was granted on the FMLA claim." Def. Br. at 11 n.7.

The elements of a disability discrimination claim under the FMLA are different from those of a discrimination or retaliation claim under Title VII and 1981. Defendant is certainly correct that Plaintiff's FMLA claim raised distinct issues that did not coincide with his Title VII retaliation

claim. Def. Br. at 11. The Court disagrees with the Defendant, however, that the FMLA claim and its proofs were so discrete that a full one-third of Ms. Lykoudis' time prior to dismissal of the claim should be eliminated. As discussed below, much of the evidence in this case was intertwined.

Accordingly, twenty percent (20%) of Ms. Lykoudis' work until the submission of dispositive motions, 205.15 hours, will be subtracted from her hours. This results in a reduction of 41.03 hours from her total time. The Court declines to subtract time from Mr. Karatinos, however, because he was retained after dispositive motions were submitted and there is no evidence in the record that he devoted time exclusively to the FMLA claim.

### Race Discrimination under Title VII and 1981a Claim

■ At trial, the jury found for the Defendant on Plaintiff's claim of race discrimination in violation of Title VII and § 1981a. As a result, the Defendant urges the Court to deduct any work by Attorneys Karatinos and Lykoudis relating to this charge from the number of hours reasonably expended in the case. Def. Br. at 12.

The Defendant maintains that the majority of the Plaintiff's efforts at trial focused on his claim of discrimination rather than retaliation, and that in the absence of the discrimination claim, the testimony of numerous witnesses could "have been measured in minutes and not hours." Def. Br. at 11–12. This assertion is undoubtedly true to a limited degree. A multi-claim litigation inherently demands that counsel focus some time and effort addressing the issues raised by each claim. The Court finds, however, that the Plaintiff's race discrimination and retaliatory discharge claims were not as discrete and unrelated as the Defendant contends. Rather, they derived from a common core of facts and overlapping legal theories. For example, much of the Plaintiff's evidence at trial centered around his contentious relationship with management, and with his supervisor, Bill McNulty in particular. One of the theories Plaintiff pursued at trial was that Mr. McNulty treated him differently because of his race and because he engaged in a protected activity. Plaintiff also sought to show that McNulty and other members of management used the Plaintiff's absences from work as a pretext for retaliatory discharge.

Evidence relevant to these allegations, and accordingly both claims, was introduced at trial. It was the cumulative effect of all of the evidence presented that caused the jury to find for the Defendant on the Plaintiff's discrimination claim, but for the Plaintiff on his retaliation claim. In cases where the claims and supporting evidence are so interrelated,

> [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. This case presents the sort of situation contemplated in *Hensley.* Moreover, the nature of fee counsel's billing records makes it impossible for the Court to accurately extract time spent exclusively on the Plaintiff's discrimination claim. Accordingly, the Court will not reduce the number of hours reasonably expended to reflect the time spent on Plaintiff's unsuccessful discrimination claim. As discussed below, an adjustment to the lodestar produces a fee award that more accurately reflects the Plaintiff's partial success in this litigation.

### Compensatory Damages

■ Finally, the Defendant asks the Court to reduce the reasonable fee to reflect the one dollar that was awarded in compensatory damages. Defendant argues that "Attorneys Karatinos and Lyk-

oudis should not receive fees for the substantial amount of time expended by them during discovery and during the trial on the issue of Plaintiff's mental pain and anguish." Def. Br. at 12.

Contrary to the Defendant's assertions, much of the evidence offered by the Plaintiff to establish compensatory damages was directly related to the evidence introduced to support his retaliation claim. Moreover, although the jury awarded the Plaintiff only $1.00 in compensatory damages, it found sufficient evidence to justify punitive damages. Accordingly, the Court will not reduce the number of hours reasonably expended because of the jury's award of only $1.00 in compensatory damages. Any adjustment necessary to reflect the Plaintiff's lack of success on the compensatory damages claim is more appropriately incorporated into a downward adjustment to the lodestar.

In sum, the Court's analysis of the reasonable hourly rate and the reasonable number of hours expended yields the following results:

For Mr. Karatinos, the reasonable hourly rate of $200 multiplied by 220.075 hours (208.075 plus 12 hours devoted to the fee application) yields a sum of $44,015.00;

For Ms. Lykoudis, a reasonably hourly rate of $110 multiplied by 402.72 hours (400.72 hours plus 2 hours devoted to the fee application) for a sum of $44,299.20.

Together, these figures result in a lodestar of $88,314.20.

**B Adjustments to the Lodestar**

■ Having reached a lodestar in the amount of $88,314.20, the Court must conduct a separate analysis to determine whether any portion of the fee should be adjusted upward or downward. *Norman,* 836 F.2d at 1303. A court may adjust the lodestar depending on the success or lack of success of a plaintiff's claims. *See Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. A reduction is appropriate if the

relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (cautioning that the degree of a plaintiff's overall success is "the most critical factor" in determining the reasonableness of a fee award).

In this case, the Defendant requests a downward adjustment to the lodestar to reflect the Plaintiff's limited success. The Defendant argues that the Plaintiff prevailed on one of his three claims, and even on that claim, the jury awarded only $7,500.00 in back pay, $1.00 in compensatory damages and $7,500.00 in punitive damages. Def. Br. at 15. These results, the Defendant notes, fall "far short" of the $316,000.00 originally sought by the Plaintiff, and they do not justify an award of over $139,000 in attorneys' fees. Def. Br. at 16.

Contrary to the Defendant's argument, the degree of a plaintiff's success is not measured solely by the amount of damages awarded by the jury. As noted above, although it is true that the Plaintiff prevailed on only one of his three claims, the jury saw fit to award punitive damages on his retaliation claim. At the same time, the Court agrees with the Defendant that the Plaintiff's success was limited, and that a minor adjustment to the lodestar is necessary to reflect that limited success. As the Defendant contends, the Plaintiff's counsel devoted effort to developing his claim of race discrimination, a claim that ultimately failed.[10] Therefore, the Court will adjust the lodestar downward by five percent (5%), or $4,415.71.

In sum, after adjusting the lodestar downward, the Court will award reasonable attorneys' fees in the amount of $83,898.49.

10. The Court will not adjust the lodestar to reflect Plaintiff's failure on his FMLA claim because that failure is already reflected in the

Court's 20% reduction in the number of hours expended by Attorney Lykoudis.

## C. Costs

Plaintiff seeks costs in the amount of $7,629.47. The Defendant argues that Plaintiff should not recover postage costs, photocopies costs, witness fees, and miscellaneous costs because such costs are not taxable under 28 U.S.C. § 1920.

■ Title 28 U.S.C. § 1920 provides that the following costs may be taxed:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Although a court may, in its discretion, deny taxable costs in favor of a prevailing party, it may not "exceed the limitations explicitly set out in §§ 1920 and 1821." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *United States Equal Employment Opportunity Commission v. W & O, Inc.* (hereinafter "*U.S.E.E.O.C.*"), 213 F.3d 600, 620 (11th Cir.2000) (citing *Crawford Fitting* ). Within these parameters, however, the Eleventh Circuit has consistently held that an award of reasonable attorneys' fees under § 1988 "must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the cost of litigation." *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983); *U.S.E.E.O.C.,* 213 F.3d at 620–24. Accordingly, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable ex-

penses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *Barnes,* 168 F.3d at 438 (quoting *Dowdell,* 698 F.2d at 1192).

The Court will now address each of the Defendant's objections to the costs requested by the Plaintiff.

### 1 Postage

Plaintiff seeks to have postage costs taxed to the Defendant. The Defendant objects to these costs on the ground that they are not taxable under § 1920. As discussed above, however, this Circuit allows reasonable postage expenses to be taxed to the losing party in certain circumstances. Here, the Defendant objects to approximately $18.06 in postage costs incurred by the Plaintiff between September 1999 and April 2000, as well as the postage incorporated within the bills from the court reporter.[11]

Section 1920(2) authorizes the taxation of deposition costs. Reasonable costs associated with depositions, such as postage for the mailing of transcripts, may similarly be taxed. *See U.S.E.E.O.C.,* 213 F.3d at 621 (citing *Tilton v. Capital Cities/ABC, Inc.,* 115 F.3d 1471, 1474 (10th Cir.1997)). Here, all of the challenged fees identified by the Defendant pertain to various communications with the court reporter, including the mailing of deposition transcripts. As the Defendant does not contend that the corresponding depositions were unnecessary, the requested postage will be awarded to the Plaintiff.

### 2 Subpoena Service

Plaintiff requests $1,050.00 for service of process fees. The Defendant objects to this request because (1) the cost of serving subpoenas is not taxable under 28 U.S.C. § 1920; (2) the cost of serving subpoenas on witnesses that never appeared for trial or were not called is excessive and unrea-

---

11. The $30.00 postage expense incurred by Plaintiff on November 19, 1999 was charged by the court reporter for the mailing of deposition transcripts.

sonable; and (3) the "investigative bills" and "rush fees" are directly attributable to the Plaintiff's failure to timely provide the server with the subpoenas. Def. Br. at 17–18 & n. 9.

 Contrary to the Defendant's assertions, reasonable service of process fees that do not exceed the statutory limits set forth in 28 U.S.C. § 1921 are taxable pursuant to § 1920(1). *U.S.E.E.O.C.*, 213 F.3d at 623–24. In accordance with §§ 1920(1) and 1921 and 28 C.F.R. § 0.114, the minimum fee for process served or executed personally is $40.00 if served by one person within regular office hours, plus travel costs and other expenses. Here, the Plaintiff has not offered any supporting documentation to show the manner in which process was served. Accordingly, the Plaintiff may recover $40.00 for each subpoena served on a witness the Plaintiff could have reasonably believed was at least partially necessary to the litigation. *See U.S.E.O.C.*, 213 F.3d at 621–24 (discussing reasonableness analysis in context of witnesses, deposition costs and photocopy charges). The Plaintiff requests fees for service on 20 people. As discussed below, the Court finds that the appearances of seven of these individuals were not reasonably necessary to the trial. Accordingly, the Court will allow process fees for thirteen (13) of these individuals, at a rate of $40/person. In addition, the Court will deny the $150 fee for investigative services as the Plaintiff has failed to explain the need for such services.

In sum, the Court will award the Plaintiff $520.00 for service of process fees.

### 3 Photocopying

The Plaintiff requests $1,756.45 in photocopy charges. The Defendant argues that the Court should exclude these costs unless the Plaintiff can demonstrate with the appropriate documentation the use and intended use of the copies.

A prevailing party may recover photocopy costs for copies that the "party could have reasonably believed" were necessary to the litigation. *U.S.E.E.O.C.*, 213 F.3d at 621–22; *Cullens v. Georgia Dept. of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994). To recover for photocopy expenses, a prevailing party must produce adequate documentation to show that the copies at issue were reasonably intended for use in the case. In the Supplement to Exhibit E of the Bill of Costs, the Plaintiff offers detailed explanations for each of the photocopy charges. This documentation sufficiently shows that Plaintiff's counsel could have felt it was reasonably necessary to copy the documents at issue, and that the copies themselves were used, or intended for use, in the litigation. The charges appear reasonable. Accordingly, the requested photocopy charges in the amount of $1,756.45 will be taxed to the Defendant.

### 4 Witness Fees

 The Plaintiff seeks $880.00 in witness fees. The Defendant objects to the Plaintiff's request for witness fees "for numerous witnesses who did not appear or who were not called to testify" at trial. Def. Br. at 16. Specifically, the Defendant contends that the Plaintiff inappropriately requests witness fees for the following 14 people who were never called at trial: Donna Ream, Connie Nelson, Charlie Bodanza, Jay Sams, David Endicott, Joel Van Auken, Lawrence Hann, Larry Minks, the Records Custodian for the employment records of Thomas Ryan, Records Custodian for the employment records of Jay Sams, Records Custodian for the employment records of David Endicott, Records Custodian for the employment records of Joel van Auken, Records Custodian for the employment records of Frank Ashton and Records Custodian for the employment records of Michael Itzo.

Section 1920 allows for the recovery of witness fees of up to $40 per day and travel expenses up to 100 miles for the appearance of witnesses at trial. A prevailing party may recover witness fees even for nontestifying witnesses if the party can show that a witness' attendance at trail was reasonably necessary. *See Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir.1987)

(holding that "district court erred in concluding that physical presence in the courtroom is necessary to recovering witness fees. Fees paid to a witness who was subpoenaed but did not actually attend the trial may be allowed as costs 'when it was reasonably expected that his attendance would be necessary and he had held himself in readiness to attend' "); *Nissho–Iwai Co. Ltd. v. Occidental Crude Sales,* 729 F.2d 1530, 1553 (5th Cir.1984) ("Although courts do not ordinarily allow fees for witnesses who have not testified at trial, a court may award such a fee if the witness was ready to testify but extrinsic circumstances rendered his testimony unnecessary."); *Lockett v. Hellenic Sea Transports, Ltd.,* 60 F.R.D. 469, 472 (E.D.Pa.1973) (holding that prevailing party may recover witness fees for subpoenaed nontestifying witness if it is shown that witness' attendance was reasonably necessary to the trial).

Here, the Court will deny fees for witnesses whose appearances at trial were not reasonably necessary. Therefore, all of the challenged fees will be disallowed with the exception of those for Donna Ream (her appearance on the first day of trial was reasonably necessary in light of the pending motions in limine) and the records custodian for the records of Joel Van Auken whose records were used at trial. Thus, the Court will reduce the requested costs by $480.00 and will tax to the Defendant witness fees in the amount of $400.00.

### 5 Miscellaneous Costs

Finally, the Defendant asks the Court to disallow as nontaxable "various other miscellaneous costs for expenses not enumerated within 28 U.S.C. § 1920." Def. Br. at 19. Specifically, the Defendant objects to "mediation costs" in the amount of $300.00.[12]

The Plaintiff has cited to no legal authority to justify taxing Defendant with mediation costs. Thus, the $300.00 in mediation fees sought by the Plaintiff will be excluded from costs.

In sum, after making the foregoing adjustments, the Court will award the Plaintiff $6,616.72 in costs.

### III Plaintiff's Motion For Prejudgment Interest

Plaintiff moves for prejudgment interest in the amount of $1,435.00. Pl. Motion for Prejudgment Interest ¶ 5.

On March 28, 2000, a judgment was entered in favor of the Plaintiff as to the charge of retaliation in violation of Title VII and § 1981, awarding the Plaintiff $7,500 for lost wages and benefits. The Plaintiff was discharged by the Defendant in November 1996. Pl. Motion for Prejudgment Interest ¶ 2. Accordingly, Plaintiff seeks prejudgment interest on the backpay award for the period of November 1996 through March 28, 2000. Pl. Motion for Prejudgment Interest ¶ 5.

The decision to award prejudgment interest on back pay to a prevailing plaintiff in a Title VII action is left to the discretion of the Court. Because the Defendant has not opposed the Plaintiff's motion, the Court will award prejudgment interest. The "interest rate for prejudgment interest on backpay awards under Title VII depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961." *McKelvy v. Metal Container Corp.,* 854 F.2d 448, 454 (11th Cir.1988); Pl. Motion for Prejudgment Interest ¶ 3. According to the Plaintiff, the average IRS prime rate during the period of November 1996 thru March 2000 was 5.6 percent (5.6%). Pl. Motion for Prejudgment Interest ¶ 4. Thus, "[s]imple interest at the rate of 5.6% for backpay in the amount of $7,500.00 in the period November 1996 to March 2000 is $1,435.00." Pl. Motion for Prejudgment Interest ¶ 5.

The Defendant does not dispute the Plaintiff's recitation of the facts, proposed average IRS prime rate or the amount of prejudgment interest requested. Accordingly, Plaintiff's motion for $1,435.00 in prejudgment interest will be granted.

---

**12.** The Court previously addressed the

$150.00 fee for investigative costs.

### IV Defendant's Amended Unopposed Motion for Extension of Time

Finally, on April 20, 2000, the Defendant filed an amended motion for an enlargement of time to April 26, 2000 to file (1) its response to the Plaintiff's motion for attorneys' fees; and (2) opposition to Plaintiff's bill of costs. This motion was unopposed. Accordingly, Defendant's motion will be granted.

### V Conclusion

For the foregoing reasons,

IT IS ORDERED on this 24th day of August, 2000, as follows:

1. Plaintiff's motion pursuant to 42 U.S.C. § 1988 for attorneys' fees and costs is **GRANTED IN PART AND DENIED IN PART** to the extent that Plaintiff is awarded $83,898.49 in attorneys' fees and $6,616.72 in costs; and

2. Plaintiff's motion for pre-judgment interest in the amount of $1,435.00 is **GRANTED;** and

3. Defendant's amended motion for an enlargement of time to file its opposition to Plaintiff's motion for attorneys' fees and costs is **GRANTED**